**Certiorari Denied, December 3, 2009, No. 32,039**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-005**

**Filing Date: October 2, 2009**

**Docket No. 28,140**

**STATE OF NEW MEXICO,**

   **Plaintiff-Appellant,**

**v.**

**MANUEL VALENCIA,**

   **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Teddy L. Hartley, District Judge**

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellant

Hugh W. Dangler, Chief Public Defender
Nancy M. Hewitt, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**SUTIN, Judge.**

**{1}**   The State of New Mexico appeals the district court's order granting Defendant Manuel Valencia's motion to dismiss on speedy trial grounds.  We hold that Defendant's right to a speedy trial was not violated.

**BACKGROUND**

1

**{2}**     Defendant was arrested on December 22, 2005.  A complaint charging him with aggravated burglary, a second degree felony, was filed in magistrate court the same day. Defendant was indicted for aggravated burglary on January 20, 2006.  He was arraigned on January 31, 2006, released on a $4000 cash bond on February 2, 2006, and required to wear an ankle monitor until May 2, 2006.  In its arraignment order, the court set a pretrial conference for April 7, 2006, a docket call for May 9, 2006, and a jury trial for May 11, 2006.

**{3}**     At the April 7, 2006, pretrial conference, the State requested a twenty-day continuance of the pretrial conference because it had not yet received information that it needed before determining whether to suggest a plea.  Defendant agreed with the continuance, and the district court granted a twenty-day continuance.  When defense counsel stated that he had not yet gone to pick up discovery from the prosecutor's office, the court urged counsel to get that done and to file any motions "as quickly as you can."

**{4}**     The State had its witnesses subpoenaed and was ready for the May 11, 2006, trial. At the May 9, 2006, docket call, Defendant asked for a continuance of 120 days to allow him more time to recover some of the stolen goods.  The State agreed to the continuance on the understanding that "Defendant will waive any time limitations and speedy trial concerns to effectuate more time to recover those items."  Defense counsel responded, "Well, that's our, agreement, your Honor.  We would ask the court to continue this matter so we could complete some of the arrangements from the plea that [the prosecutor] described."  On August 2, 2006, the court set a plea hearing for September 7, 2006.

**{5}**     Under the terms of a proposed plea agreement discussed at the September 7, 2006, plea hearing, Defendant was to plead guilty to the lesser-included offense of third degree residential burglary and receive a suspended three-year sentence, instead of facing a possible nine-year sentence for the second degree felony of aggravated burglary.  Further, Defendant would continue to pay restitution and would continue efforts to recover stolen property.  The prosecutor informed the district court that the information provided by Defendant was not sufficient for a search warrant, and no stolen property had been recovered.  The prosecutor nevertheless recommended that the court accept the plea agreement.  Defense counsel stated that Defendant would have to make restitution of over $12,000, that he could not do so if he were incarcerated, and that probation was appropriate to allow Defendant to continue his efforts to recover the stolen property.

**{6}**     The victim of the burglary addressed the court at the plea hearing.  She stated that some of the items stolen had sentimental value, that no stolen items had been recovered during the four-month continuance, and that she opposed the plea agreement.  Troubled that Defendant had not been successful in facilitating recovery of any of the stolen goods, the court decided that probation would not likely enable Defendant to ever make significant restitution.  The court suggested that the plea agreement appeared to be unduly favorable to Defendant by allowing only three years probation, while the original charge of the second

degree felony of residential burglary was a serious one, and no stolen property had been recovered. Defense counsel responded that Defendant would continue to cooperate with authorities to recover stolen items. The court gave Defendant another thirty days to work toward recovery of stolen items and for the court to determine whether to accept the plea agreement based on whether further efforts were successful. On September 28, 2006, the court scheduled a plea hearing for November 9, 2006.

{7}      During the November 9, 2006 plea hearing, two police investigators testified that the information Defendant had given them was very vague and did not help to locate any of the stolen items. The court stated that the postponed plea agreement was unduly generous, and the court rejected the plea agreement. On November 29, 2006, a pretrial conference was set for December 28, 2006, and a jury trial was set for February 5, 2007. At the December 28, 2006, pretrial conference, the State announced that it was ready for the scheduled trial, but Defendant stated that he was still reviewing what occurred at the September 7, 2006, plea hearing and was considering whether to ask the district court judge to recuse himself on the basis of that hearing. The court urged Defendant not to delay on deciding upon filing a motion for recusal and promised to act quickly on any defense motion.

{8}      On January 5, 2007, Defendant filed a motion requesting recusal. This motion was based entirely on statements made by the court at the September 7, 2006, plea hearing. Defendant explained that the court had heard Defendant admit he would enter a guilty plea under the plea agreement, that there was a factual basis for the charge, and that the court was troubled that Defendant had not returned any stolen property although restitution was part of the plea agreement.

{9}      Although the case was to be tried by a jury, the court filed a notice of voluntary recusal on January 17, 2007. The case was reassigned to another judge on February 26, 2007, but apparently in April 2007, that judge was forbidden to hear criminal cases because of a conflict of interest. The State filed a motion on April 17, 2007, to assign a new judge. The case was reassigned to a third judge on May 1, 2007, who on May 11, 2007, granted the State's request for an extension of time pursuant to Rule 5-604(C) NMRA to August 8, 2007. On July 2, 2007, the court set a pretrial conference for September 4, 2007, and a jury trial for October 9, 2007. On August 2, 2007, our Supreme Court granted a Rule 5-604 extension to December 6, 2007.

{10}      On August 20, 2007, Defendant filed a motion to dismiss on the ground of a speedy trial violation. On August 31, 2007, a hearing on this motion to dismiss was set for September 4, 2007. During the September 4, 2007, hearing the State was given ten days to respond to Defendant's motion to dismiss. On September 13, 2007, the State filed a response to Defendant's motion. On September 26, 2007, the district court issued a decision letter holding that Defendant's speedy trial right had been violated and dismissed the case. According to the court, which considered the total lapse of time to be a twenty-one-month delay from arrest on December 22, 2005, to October 9, 2007, nine and one-half months from May 9, 2006, to February 26, 2007, was attributable to Defendant because he "played an active role in this delay." This left an eleven-and-one-half-month delay attributable to the State, which was a period that exceeded "the [nine] months [permissible] for a simple case

3

by approximately 30%." The court thereafter entered a formal order of dismissal on October 10, 2007, and the State appealed.

## DISCUSSION

### I.     Speedy Trial

**{11}** We apply the four-part balancing test for evaluating speedy trial claims established in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). *State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387. These four factors are length of delay, reasons for delay, the defendant's assertion of his right, and the prejudice to the defendant. *Id.* "In considering each of these factors, we defer to the trial court's factual findings but review de novo the question of whether [the d]efendant's constitutional right was violated." *State v. O'Neal*, 2009-NMCA-020, ¶ 14, 145 N.M. 604, 203 P.3d 135 (filed 2008) (internal quotation marks and citation omitted). While deferential to the district court's fact finding, we independently balance the *Barker* factors. *Zurla v. State*, 109 N.M. 640, 642, 789 P.2d 588, 590 (1990); *State v. Tortolito*, 1997-NMCA-128, ¶ 6, 124 N.M. 368, 950 P.2d 811. We analyze the claims on a case-by-case basis and examine all four factors in order to weigh the conduct of both the State and the defense, with no one factor as talismanic. *State v. Urban*, 2004-NMSC-007, ¶ 11, 135 N.M. 279, 87 P.3d 1061; *see also Garza*, 2009-NMSC-038, ¶ 11 ("[T]he substance of the speedy trial right is defined only through an analysis of the peculiar facts and circumstances of each case.").

**{12}** The speedy trial right attaches "when the defendant becomes an accused, that is, by a filing of a formal indictment or information or arrest and holding to answer." *State v. Maddox*, 2008-NMSC-062, ¶ 10, 145 N.M. 242, 195 P.3d 1254 (internal quotation marks and citation omitted). Here, Defendant was arrested and charged in magistrate court on December 22, 2005. Defendant's speedy trial attached at that point.

### Length of Delay

**{13}** Our very first task, under the length-of-delay factor is to examine whether the delay is presumptively prejudicial. *Garza*, 2009-NMSC-038, ¶¶ 21-24. A presumptively prejudicial delay triggers further inquiry into each of the four *Barker* factors. *Garza*, 2009-NMSC-038, ¶ 21.

**{14}** The district court found, and it is not contested, that this was a simple case. At the time of entry of the court's decision letter and dismissal order in September and October 2007 in the present case, the applicable guideline for a presumption of prejudice in a simple case was nine months. *See Maddox*, 2008-NMSC-062, ¶ 9. *Garza*, however, changed this benchmark to a guideline of one year for a simple case. *See Garza*, 2009-NMSC-038, ¶¶ 44, 48. This new speedy trial guideline applies to speedy trial motions to dismiss initiated on or after August 13, 2007. *Id.* ¶ 50. Because Defendant's speedy trial motion to dismiss was filed on August 20, 2007, the new *Garza* guideline of one year for a simple case applies.

4

**{15}** Defendant acknowledges that he waived his Sixth Amendment right "for the discrete purpose of implementing the terms of the plea agreement he was contemplating." Thus, in anticipation of a plea, Defendant expressly and concededly waived his speedy trial right for at least the period of time during which Defendant attempted, albeit unsuccessfully, to assist authorities in recovering the stolen items. This delay amounts to an approximate six-month period, from May 9, 2006, to approximately November 9, 2006, that Defendant cannot include as part of the total length of delay because of his waiver. The claimed overall twenty-one-month lapse of time is therefore, in fact, a fifteen-month lapse of time. Applying the newly established one-year guideline, the one-year, three-month total lapse of time after deducting that which Defendant waived is presumptively prejudicial and triggers inquiry into the four *Barker* factors.

**{16}** The mere circumstance of this fifteen-month lapse of time does not in itself establish a speedy trial violation. *Barker*, 407 U.S. at 533; *Garza*, 2009-NMSC-038, ¶ 23 (stating that no one factor alone is sufficient to find a violation of the speedy trial right); *Zurla*, 109 N.M. at 642, 789 P.2d at 590 ("[N]o one factor constitutes either a necessary or sufficient condition to finding a deprivation of the right to a speedy trial."). The three months beyond the bare minimum needed to trigger judicial examination of the claim does not cause us to consider the delay in any way extraordinary or cause us to weigh the delay heavily in Defendant's favor. *See Garza*, 2009-NMSC-038, ¶ 24 (holding a delay that "scarcely" crossed the trigger point is "not extraordinary and does not weigh heavily in [the d]efendant's favor"). We see no basis on which to weigh the three-month excess more than slightly in Defendant's favor.

**Reasons for the Delay**

**1.    In General**

**{17}** In addressing the reasons for delay, we examine the reasons given by the State to justify time lapses. *See id.* ¶¶ 25-30 (quoting *Barker*'s statement that "[c]losely related to length of delay is the reason the government assigns to justify the delay," and addressing delay only from the standpoint of whether the government delay was deliberate, negligent, or administrative, or based on a valid reason). Deliberate delay is weighed heavily against the State. *Id.* ¶ 25. A more neutral reason such as negligence or administrative delay, including overcrowded dockets, is weighed "less heavily," and the weight to be assigned depends on the length of the delay, such as whether it is extraordinary or protracted. *Id.* ¶¶ 26, 30. While valid reasons for delay may relieve the State from any weight attribution, the appellate court nevertheless is to "balance the reasonableness of the manner in which the State has moved [the] case toward trial against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question." *Id.* ¶ 27 (internal quotation marks and citation omitted).

**{18}** Under its valid-reason-for-delay discussion, the Court in *Garza* quotes *Doggett v. United States*, 505 U.S. 647, 656 (1992): "Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable." *Garza*, 2009-NMSC-038, ¶ 27 (internal quotation marks and citation omitted). *Maddox* indicates that where a case moves

5

"toward trial with customary promptness," the period of time is to be weighed "neutrally between the parties." 2008-NMSC-062, ¶ 27. Combining *Maddox* and *Garza*, we see that periods of time considered "inevitable" and periods during which the case is moved "toward trial with customary promptness" are not to be weighed against the State.

**{19}** The State has the burden to bring a defendant to trial. *Maddox*, 2008-NMSC-062, ¶ 26. The State has the further burden "to demonstrate that, on balance, the defendant's speedy trial right was not violated." *Zurla*, 109 N.M. at 646, 789 P.2d at 594; *see Maddox*, 2008-NMSC-062, ¶ 12. It is the State's justification for delay that we examine in a speedy trial analysis. *See Garza*, 2009-NMSC-038, ¶ 25. The State therefore has the burden of demonstrating why a particular pretrial time lapse was "both inevitable and wholly justifiable," *id.* ¶ 27, and whether a case has moved "toward trial with customary promptness," *Maddox*, 2008-NMSC-062, ¶ 27, if the State does not want such periods of time to be weighed against it.

## 2. Parsing the Periods of Delay

**{20}** We start with Defendant's arrest and the magistrate court proceeding beginning December 22, 2005, continuing to pretrial on April 7, 2006, a three-and-one-half-month period. The time from arrest and magistrate court charge to indictment on January 20, 2006, in district court, a period of close to a month, weighs against the State. *See Garza*, 2009-NMSC-038, ¶ 28 (stating that "the State's discretion to dismiss a criminal case in magistrate court and reinstate charges in district court does not justify the delay"). The remainder of the three and one-half months up to the April 7, 2006, pretrial conference does not appear to be an unusually protracted period or to indicate something other than movement toward trial with customary promptness. The State argues that because on May 9, 2006, it informed the court that it was ready for trial on May 11, 2006, with witnesses subpoenaed, the State showed that it was acting with reasonable diligence. Our sense is that this two-and-one-half-month period from indictment to readiness for trial was reasonable and customary in getting a defendant to trial and that the State has satisfied its burden to demonstrate a valid reason for the time lapse from January 20 to April 7. We do not weigh this time against the State.

**{21}** Continuing on with the monthly delay "play-by-play," the one month that followed between the pretrial conference on April 7, 2006, and the docket call on May 9, 2006, resulted from an agreed-upon continuance because the State had not yet received information it needed to determine whether to suggest a plea. This time is not chargeable against the State. *See State v. Downey*, 2007-NMCA-046, ¶ 40, 141 N.M. 455, 157 P.3d 20 (stating that where both the defendant and the prosecutor agreed to an extension, the extension should not be weighed against the prosecution), *rev'd on other grounds*, 2008-NMSC-061, 145 N.M. 232, 195 P.3d 1244.

**{22}** In this evaluation, we eliminate the period from May 9, 2006, to November 9, 2006, as to which Defendant waived his speedy trial right by receiving continuances to allow him more time to locate the stolen goods. Jumping over that time, we address the period from November 9, 2006, to February 26, 2007, approximately three and one-half months. The parties do not point out whether the record shows why the court recused. The court

6

apparently thought the better part of discretion was to recuse after the filing of Defendant's motion requesting that the district judge recuse himself. Whatever the reasoning of the court or the propriety of the recusal, we do not think that the time involved in the recusal process should be weighed against the State. However, even if we were to weigh it against the State, we would do so only slightly, and the outcome of Defendant's speedy trial motion would not change.

**{23}** We give Defendant the benefit of doubt and consider the two-month period from February 26 to May 1, 2007, which was the period between the assignments of the second and third judges, to be attributable to the State based on an internal district court concern about the second judge sitting in criminal cases and not, therefore, attributed to Defendant as the consequence of the recusal process initiated by Defendant. We weigh this two-month period slightly against the State.

**{24}** Upon assignment of the third judge, on July 2, 2007, the court set a pretrial conference to occur on September 4, 2007. Further, the court agreed to a Rule 5-604(C) extension and set trial for October 9, 2007, which was over five months from the May 1, 2007, date of the third judge assignment. The State considers the need for a third judge assignment and the time for this judge to set the case back on track with pretrial and trial settings to constitute valid reasons for delay. We do not think that the full time from the point it was determined the second judge could no longer sit in the case to the point of trial is to be weighed against the State. The State does not provide any detail to demonstrate what, in particular, would be justifiable as a valid reason for the passage of the five-month period. However, it seems reasonable to conclude that some amount of time for the third judge to get the case on track and tried should be considered inherent and customary, given the initial recusal. We give the benefit of doubt on this measurement to both parties. We weigh three out of the five months slightly against the State and consider the other two months as an inherent delay and appropriate movement of the case with customary promptness.

**{25}** In sum, for ease of calculation, we round off the total lapse of time from December 22, 2005, to October 9, 2007, to twenty-one months. We deduct six months that Defendant waived, leaving fifteen months to evaluate. Six months are to be weighed slightly against the State. Nine months are not weighed against the State. There exists no evidence of any intentional delay on the part of the State. We see no extraordinary or protracted delay attributable to the State. Thus, on balance, we do not believe that the reasons-for-delay factor should weigh against the State.

**Assertion of Right**

**{26}** Under the assertion-of-right factor, we accord weight depending upon the frequency and force with which a defendant objects to delay. *Garza*, 2009-NMSC-038, ¶ 32. We analyze Defendant's actions relating to timeliness, vigor, and acquiescence. *Id.* ¶¶ 32, 34; *see also Maddox*, 2008-NMSC-062, ¶ 31 (weighing this factor slightly in the defendant's favor but noting that the assertions of his right "were neither timely nor forceful").

7

**{27}** Defendant asserted a speedy trial right when he filed an entry of appearance in magistrate court on January 23, 2006, and made a pro forma demand for a speedy trial. Early pro forma assertions are generally afforded relatively little weight. *Maddox*, 2008-NMSC-062, ¶ 29; *State v. Marquez*, 2001-NMCA-062, ¶ 21, 130 N.M. 651, 29 P.3d 1052 ("While [the d]efendant's demand was made early in the proceedings, the demand was perfunctory in nature and we assign it little weight."). Defendant did not thereafter request or demand a speedy trial. On August 20, 2007, some nineteen months after his appearance in magistrate court and about one and a half months before the October 9, 2007, trial date, he moved to dismiss for violation of his speedy trial right. We see little vigor or force on Defendant's part to protect his right. We hold that Defendant's assertions of his speedy trial right weigh only slightly in his favor.

**Prejudice to Defendant**

**{28}** Prejudice is evaluated in light of three interests of a defendant that the right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused, and (3) to limit the possibility that the defense would be impaired. *Barker*, 407 U.S. at 532; *Garza*, 2009-NMSC-038, ¶¶ 35-36. "As to the first two types of prejudice, . . . we weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Garza*, 2009-NMSC-038, ¶ 35 (citation omitted). The third type of prejudice is "the most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532; *Garza*, 2009-NMSC-038, ¶ 36. Defendant bears the burden to demonstrate and substantiate prejudice. *Garza*, 2009-NMSC-038, ¶¶ 35-37; *Maddox*, 2008-NMSC-062, ¶ 32.

**{29}** Defendant does not show any adverse consequences resulting from the court-imposed pretrial restriction against out-of-state travel. That Defendant spent one month incarcerated, had to wear an ankle monitor for three months after he was bonded out, and could not go out of state, does not satisfy his burden to demonstrate undue pretrial incarceration. *See Marquez*, 2001-NMCA-062, ¶ 27 (refusing to accept the defendant's argument that travel restrictions impacted his job opportunities); *State v. White*, 118 N.M. 225, 227, 880 P.2d 322, 324 (Ct. App. 1994) ("[The d]efendant, having been released on bond, did not suffer oppressive pretrial incarceration."); *cf. State v. Manes*, 112 N.M. 161, 169, 812 P.2d 1309, 1317 (Ct. App. 1991) (holding that there was no actual prejudice where the defendant's only claim of prejudice was attorney fees he had to pay due to numerous preliminary hearing continuances). Defendant has not demonstrated anxiety beyond that which would be inherent in his circumstances. *See Maddox*, 2008-NMSC-062, ¶ 33 (noting that some degree of anxiety is inherent for every defendant who is jailed while awaiting trial). We will not speculate as to any other possible impact of pretrial incarceration or anxiety. *Garza*, 2009-NMSC-038, ¶ 35. Furthermore, and importantly, Defendant did not substantiate any particular impairment to his defense, and we will not speculate as to a defense impairment based on Defendant's broad claim that the delay presumptively compromised the reliability of the trial in unidentifiable ways. *See Maddox*, 2008-NMSC-062, ¶ 34 (stating that the defendant's claim that his defense was impaired because it presumptively compromised the reliability of a trial was too speculative to weigh against the prosecution). In sum, we hold

that Defendant did not make a particularized showing of prejudice that is cognizable under the prejudice factor. *See Garza*, 2009-NMSC-038, ¶ 37 (requiring particularized prejudice and holding that the defendant "made no showing of prejudice that is cognizable under the fourth *Barker* factor").

**Balancing of Factors**

**{30}** "The heart of the right to a speedy trial is preventing prejudice to the accused." *Id.* ¶ 12.

> [G]enerally[,] a defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect. However, if the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated.

*Id.* ¶ 39. Here, as in *Garza*, "Defendant failed to show prejudice, and the other factors do not weigh heavily in Defendant's favor." *Id.* ¶ 40. We therefore conclude that Defendant's right to a speedy trial was not violated.

**CONCLUSION**

**{31}** We reverse the district court's dismissal, and we remand to district court to reinstate the case and the charges against Defendant. Because we reverse the speedy trial dismissal, we do not need to address the State's appellate point that Defendant waived his right to a speedy trial for the entire lapse of time from arrest to trial.

**{32}** **IT IS SO ORDERED.**

                                               _____

                                                **JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**RODERICK T. KENNEDY, Judge**

_____

**LINDA M. VANZI, Judge**

**Topic Index for *State v. Valencia*, No. 28,140**

AE                  APPEAL AND ERROR
AE-RM             Remand

CT              CONSTITUTIONAL LAW
CT-ST           Speedy Trial

CA              CRIMINAL PROCEDURE
CA-DC           Dismissal of Charges
CA-RD           Right to Speedy Trial