This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

Plaintiff-Appellant,

v. **No. 34,443**

**DAMON MORGAN,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**George P. Eichwald, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Kenneth H. Stalter, Assistant Attorney General
Albuquerque, NM

for Appellant

Ray Twohig
Albuquerque, NM

for Appellee

## MEMORANDUM OPINION

**VIGIL, Chief Judge.**

{1}     The State appeals from the district court's order granting Defendant's motion to dismiss for a speedy trial violation. We affirm.

**BACKGROUND**

{2}     Defendant was a waiter at a restaurant where he served drinks to two female customers. The State alleged that Defendant placed Valium in the women's drinks without their knowledge and consent. Defendant was arrested on May 13, 2011, and on March 15, 2012, was indicted on two counts of distribution of a controlled substance under NMSA 1978, Section 30-31-22 (2011), and two counts of aggravated battery (great bodily harm) under NMSA 1978, Section 30-3-5(C) (1969).

{3}     Defendant filed a motion to dismiss on speedy trial grounds. Following a two-day motion hearing and the admission of approximately fifty-six exhibits, the district court found: (1) without determining the level of complexity, that the length of the delay was "excessive even for a complex case"; (2) the reason for the delay, except for three months, "can [all] be attributed to administrative lapse [and] laxity in prosecution," thus weighing heavily against the State; (3) that Defendant asserted his right to a speedy trial; and (4) that Defendant was substantially prejudiced by the delay. The State argues on appeal that the district court erred in its examination of the *Barker* factors. Because this is a memorandum opinion and the parties are familiar

with the facts and procedural posture in this case, it is unnecessary for us to set them forth, except as required for our analysis.

**DISCUSSION**

**I.     Standard of Review**

**{4}**     When we review a speedy trial claim, we weigh the conduct of both the prosecution and the defendant by balancing the four factors as set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). *State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387. Those factors are: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right; and (4) the actual prejudice to the defendant. *Id.* We give deference to the district court's factual findings on each factor as long as they are supported by substantial evidence, but weigh and balance the *Barker* factors de novo. *State v. Montoya*, 2015-NMCA-056, ¶ 12, 348 P.3d 1057.

**II.     Analysis**

**{5}**     The State's argument on appeal, in essence, is that while the district court properly weighed each of the *Barke*r factors against the State, it weighed them too heavily. Without deciding whether the State is correct about the weight to be given to each factor here, the result does not change. The *Barker* factors are weighed "either in favor of or against the State or the defendant, and then balanced to determine if a defendant's right to a speedy trial was violated." *State v. Spearman*, 2012-NMSC-023,

¶ 17, 283 P.3d 272. If each of the *Barker* factors weighs against the State, there is a speedy trial violation. *See State v. Lujan*, 2015-NMCA-032, ¶ 27, 345 P.3d 1103 (stating that a district court properly dismissed the defendant's charges on speedy trial grounds when the *Barker* factors weighed against the State and in favor of the defendant).

{6}    Once Defendant has shown that the delay is beyond the presumptively prejudicial threshold, the State has the burden of persuasion "to show, on balance, that the four factors do not weigh in favor of dismissal." *See State v. Stock*, 2006-NMCA-140, ¶ 12, 140 N.M. 676, 147 P.3d 885 (internal quotation marks and citation omitted). Neither party disputes that the length of delay was forty-three months and went beyond the presumptively prejudicial threshold. *See Spearman*, 2012-NMSC-023, ¶ 21 ("A delay of trial of one year is presumptively prejudicial in simple cases, fifteen months in intermediate cases, and eighteen months in complex cases.").

{7}    After reviewing the State's arguments, we conclude it has failed to meet its burden. First, the State concedes that the length of the delay weighs moderately against it. Second, with regard to the reason for the delay, the State only argues that Defendant acquiesced or caused at least eight months of the delay out of a forty-three-month period. The State does not cite to any authority that the overall delay should weigh against Defendant based on this eight-month period where he either consented to or caused the delay. *See State v. Ibarra*, 1993-NMCA-040, ¶ 13, 116 N.M. 486, 864

4

P.2d 302 ("We are entitled to assume, when arguments are unsupported by cited authority, that supporting authorities do not exist."). Third, the State concedes that Defendant's assertion of his right "was clearly adequate and somewhat frequent and forceful." Finally, regarding the actual prejudice suffered by Defendant, the State does not challenge the district court's finding that "Defendant has suffered mental and emotional deterioration due to the delay in bringing this matter to finality." *See Garza*, 2009-NMSC-038, ¶ 35 (stating the types of prejudice the speedy trial right was designed to prevent as (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) impairment to a defense). This finding is sufficient to establish prejudice grounded on undue anxiety. *See id.* (stating that when the anxiety suffered is undue, this factor weighs in the defendant's favor).

{8} Nevertheless, because of the importance of a finding of prejudice to a speedy trial violation, we address the State's sufficiency of evidence challenge to the district court's finding of prejudice. *See State v. Valencia*, 2010-NMCA-005, ¶ 30, 147 N.M. 432, 224 P.3d 659 ("The heart of the right to a speedy trial is preventing prejudice to the accused." (internal quotation marks and citation omitted)). The district court found that Defendant was "substantially prejudiced" by the delay for the following reasons: (1) Defendant's education and future career in nursing were negatively affected; (2) Defendant's current or future employment prospects have been "severely hampered"; and (3) a crucial defense witness was no longer available due to his death. In

reviewing the record, we hold that there was sufficient evidence to support these findings.

{9}     Defendant testified about the hardships that he faced as a student in nursing school during the pending case. Defendant was "blackballed and shunned" by people who had previously interacted with him prior to the allegations. The "upper echelons" behaved the same way toward Defendant. At a clinical site located at the University of New Mexico, staff members became aware of the allegations when a fellow student showed them publicity about Defendant and the student warned them to be careful with this individual; he further stated that "[Defendant] is a rotten apple." When the accusations became known, Defendant was escorted from the dormitories. Complaints were then made against Defendant, and within a few hours from Defendant's notification about these complaints, he received an e-mail that he was expelled from nursing school. Defendant was reinstated and received his degree after defense counsel had a meeting with the Director of the Central New Mexico Community College, School of Health, Wellness & Public Safety, and the Nursing Director, but he was not allowed to graduate with his class. Moreover, Defendant was escorted from the building on the last day of the school year. Defendant said these incidents happened as a result of this case.

{10} In addition, Defendant had difficulty in obtaining employment and pursuing his nursing career while the case was on-going. Defendant first lost his job after the alleged incident and was rejected for approximately forty-six positions by Tri-Core Reference Laboratories and the Lovelace Respiratory Research Institute, both asserting that they found a better candidate. Another company would not hire Defendant after it consulted with its attorney who stated that he was a liability. In addition Defendant did not apply for a nursing license due to this case. A criminal background check must be authorized in order for the application to be processed for the licensing exam. *See* NMSA 1978, § 61-3-28(A)(3) (2004) (stating that the licensing board can deny any application for a nursing license on the grounds that the applicant "is unfit or incompetent"). Defendant spoke with the staff at the New Mexico Board of Nursing, potential employers, and people who have obtained their license, and he was advised not to apply for the exam because it would ruin his ability to submit his application again once the case was resolved. Based on the "red flags" that the pending charges created, Defendant postponed his nursing career.

{11} The State contends, referring to dicta in *Spearman,* 2012-NMSC-023, ¶ 39, and *Lujan*, 2015-NMCA-032, ¶ 20, that we only consider whether the prejudice resulted from the delay beyond the prejudice threshold in our speedy trial analysis. We have previously rejected this interpretation of the dicta in *Spearman:*

> The [s]tate relies on the *Spearman* Court's statement that such evidence could have established that the delay in trial beyond the presumptive period caused the alleged prejudice as opposed to the original indictment. In our view, however, the [s]tate's reliance on the Court's dicta is misplaced. We do not believe that the *Spearman* Court's statement was intended to espouse a principle that prejudice suffered after the indictment but prior to the speedy trial triggering date has no bearing on our analysis. Rather, insofar as the *Spearman* Court was focused on the question whether the allegations of prejudice could be substantiated by evidence, we believe the Court's statement was intended to convey that the defendant must prove with specificity whether and how he was prejudiced by the pending charges. That is all that can reasonably be read into the Court's dicta in this regard.

*State v. Vigil-Giron*, 2014-NMCA-069, ¶ 50, 327 P.3d 1129 (alteration, internal quotation marks, and citations omitted). In our speedy trial analysis, we view the prejudice through the life span of the case, recognizing that the anxiety, stress, and social problems connected with the criminal indictment worsen over time. *Id.* ¶ 48. We therefore follow the proposition established from our case law that "once the date of presumptive prejudice has passed, we may consider indicia of prejudice spanning from the date that the charges were filed through the date of the case's resolution." *Id.*

{12} The State also argues that the incidents involved with Defendant's education, employment, and career are too speculative to connect to the on-going case, contending that no testimony established that these occurrences resulted from the unresolved case. This argument, however, ignores that when examining whether a factual finding is supported by substantial evidence "we review the evidence in the light most favorable to upholding the finding and indulge all reasonable inferences in

8

support of the trial court's decision." *Robertson v. Carmel Builders Real Estate*, 2004-NMCA-056, ¶ 20, 135 N.M. 641, 92 P.3d 653. Here, a reasonable inference from the evidence is that the unresolved case severely prejudiced Defendant's education, employment, and career in nursing. *See Salandre v. State*, 1991-NMSC-016, ¶ 18, 111 N.M. 422, 806 P.2d 562 (stating that the right to a speedy trial "protects against interference with a defendant's liberty, disruption of employment, curtailment of associations, subjection to obloquy, and creation of undue anxiety"), *holding modified on other grounds by Garza*, 2009-NMSC-038.

{13}     Finally, regarding the district court's finding on the crucial witness, the State argues that Defendant presented no evidence of Charles Yates' potential testimony or that the delay caused his unavailability. *See Garza*, 2009-NMSC-038, ¶ 36 ("If the defendant asserts that the delay caused the unavailability of a witness and impaired the defense, the defendant must state with particularity what exculpatory testimony would have been offered, and the defendant must also present evidence that the delay caused the witness's unavailability." (alterations, internal quotation marks, and citation omitted)). We disagree. An impaired defense from the delay is the most serious type of prejudice. *Id.* As the United States Supreme Court articulated in *Barker*, [i]f witnesses die or disappear during a delay, the prejudice is obvious." 407 U.S. at 532.

**{14}** Here, Defendant showed that Yates died on September 21, 2014—approximately three years after his arrest. According to Defendant, Yates was the bartender on the night that the State claimed he placed Valium in the drinks of one of the alleged victims without her knowledge or consent. Yates made six drinks for one of the alleged victims, and Defendant, as the waiter, delivered the drinks. The first drink was returned to Yates because the alleged victim stated that it was not tasty or strong enough. Yates added more ingredients, and the drinks were then "mixed" that way throughout the night. Because the State alleges that Defendant placed Valium in the victim's drinks, the chain of events from making to serving the drinks is significant, and as such, the person who was the bartender and interacted with Defendant as the waiter was clearly important to the case. Yates's death during the delay prevents Defendant in providing testimony from someone who worked with Defendant closely throughout that evening.

**{15}** The State notes that Yates was never listed as a witness and Defendant did not present any evidence on whether anyone had interviewed Yates or taken his statement. To the extent the State argues that Yates would not be able to testify as a witness at the trial, it is unclear on what basis the State takes this position on appeal. *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [the] arguments might be."). In

10

any event, the district court did not make any finding that Yates would not be allowed to testify at trial. On the contrary, the district court's finding that Yates was a crucial defense witness supports the view that the district court would have permitted his testimony.

{16}     Overall, because the State failed to meet its burden that the factors, on balance, do not demonstrate a speedy trial violation and the evidence supports the challenged findings of prejudice, we conclude that the district court properly dismissed the indictment.

**CONCLUSION**

{17}     The order of the district court is affirmed.

{18}     **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Chief Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**RODERICK T. KENNEDY, Judge**

11