This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-42333

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**SARAH HOUSE,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Douglas W. Decker, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Henry Chynoweth, Honors Attorney/Assistant Solicitor General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**HOUGHTON, Judge.**

**{1}** The State appeals the district court's order dismissing its criminal case against Defendant on speedy trial grounds pursuant to Rule 5-604(B) NMRA. Upon review of Rule 5-604's factors, we reverse the district court and remand for further proceedings.

## BACKGROUND

**{2}** On July 19, 2023, the State charged Defendant in the magistrate court of the Eleventh Judicial District with aggravated driving while under the influence of intoxicating liquor or any drugs (.16 or above), in violation of NMSA 1978, Section 66-8-102(D)(1) (2016). The magistrate court set an initial trial date of February 16, 2024, under Rule 6-506 NMRA (i.e. the six-month rule),[1] which states that criminal trials in magistrate court "shall be commenced within one hundred eighty-two (182) days" from the date of arraignment. Rule 6-506(B)(1).

**{3}** Defense counsel entered his appearance on September 13, 2023, and requested a continuance to conduct a witness interview and to learn the case. Defense counsel, though, did not appear at the interview scheduled for October 4, 2023. Unfortunately, defense counsel's own legal troubles then prevented the case from proceeding when "the State had to refrain from engaging in any discussions with [defense counsel]" because of "the possibility of having to review potential criminal charges" against him.

**{4}** Defense counsel withdrew on November 20, 2023, and new counsel for Defendant entered his appearance on the same day. On December 5, 2023, the State became aware that Defendant had new counsel and sent Defendant a plea offer. On December 6, 2023, at the final scheduled pretrial hearing, the parties agreed to 30 days of excludable delay so Defendant could review and consider the plea offer.

**{5}** Because Defendant rejected the State's plea deal, on December 28, 2023, the State dismissed Defendant's charges in magistrate court and refiled in the district court under Rule 5-604(A). According to the State, it dismisses cases like Defendant's to conserve resources when trial is imminent because "almost every DWI trial conviction in McKinley County [M]agistrate [C]ourt over the past several years has been appealed to the district court for a trial de novo." We also note that, although the record is unclear, the State concedes that Defendant made two speedy trial assertions in the magistrate court. The State claims that these assertions were pro forma and Defendant does not dispute this characterization.

**{6}** After refiling in district court, the case proceeded normally until March 12, 2024, when Defendant filed her first motion to dismiss on speedy trial grounds, seven business days before the scheduled trial date of March 21, 2024. The district court granted Defendant's motion. At this point, it had been 237 days since Defendant's arraignment in magistrate court.

**{7}** On April 24, 2024, however, the district court reversed course based upon the State's motion for reconsideration. The court rescheduled trial for July 19, 2024. The day before trial, the district court judge fell ill and continued trial sua sponte. The district court did not immediately reset the trial, and on September 16, 2024, the State filed a request for a trial setting.

---

[1]Although our magistrate courts are not courts of record, *see* NMSA 1978, § 35-1-1 (1968), the parties do not dispute the timeline of events.

**{8}**     The district court reset trial for October 11, 2024. Defendant filed a second motion to dismiss on speedy trial grounds in response to the October trial setting. During a hearing on September 26, 2024, defense counsel moved to continue the October 11 trial due to counsel's unavailability if the motion to dismiss was not granted. Defendant filed that motion to continue on October 4, 2024. The district court entered a written order granting Defendant's motion to dismiss on October 8, 2024, stating that the soonest the court could schedule a new trial was in November and that Defendant's speedy trial right had been violated. The district court's written order placed particular emphasis on its own failure to reset Defendant's trial after cancelling the July 19 trial, explaining that "[t]he [c]ourt is an arm of the [s]tate and has a responsibility to bring cases to trial [which] should be considered if the court is the reason for delay." All told, 447 days elapsed between Defendant's arraignment in magistrate court and the district court's grant of Defendant's second motion to dismiss.

## DISCUSSION

### I.     Standard of Review and Applicable Law

**{9}**     "In determining whether a defendant has been deprived of the right to a speedy trial, we analyze the four factors set out by the United States Supreme Court in *Barker v. Wingo*[, 407 U.S. 514 (1972)]." *State v. Deans*, 2019-NMCA-015, ¶ 5, 435 P.3d 1280. These factors are: "(1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. When reviewing a decision to grant or deny a motion to dismiss on speedy trial grounds, "we give deference to the district court's factual findings, but we review the weighing and the balancing of the *Barker* factors de novo." *State v. Spearman*, 2012-NMSC-023, ¶ 9, 283 P.3d 272 (text only) (citation omitted).

**{10}**     "The right of the accused to a speedy trial is guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution." *Id.* ¶ 16. "[B]ecause of the . . . societal interest in bringing an accused to trial[,] . . . we must scrutinize every claimed violation to determine whether the accused has suffered an actual and articulable deprivation of the right to a speedy trial." *Serros*, 2016-NMSC-008, ¶ 4 (internal quotation marks and citation omitted). Determining whether the right has been violated requires "an analysis of the peculiar facts and circumstances of each case." *Spearman*, 2012-NMSC-023, ¶ 16 (internal quotation marks and citation omitted).

**{11}**     In our magistrate courts and other courts of limited jurisdiction, Rule 6-506 demands that "[t]he trial of a criminal citation or complaint shall be commenced within one hundred eighty-two (182) days after . . . the date of arraignment." Rule 6-506(B)(1). In district courts, however, our Supreme Court has "abolished" this six-month rule. *State v. Cruz*, 2021-NMSC-015, ¶ 46, 486 P.3d 1. Instead, defendants "may rely upon and assert their right to a speedy trial whenever they believe impermissible delay has occurred; whether that delay is the result of a dismissal and refiling or any other cause."

*State v. Savedra*, 2010-NMSC-025, ¶ 9, 148 N.M. 301, 236 P.3d 20 (describing the six-month-rule as "an unnecessary and sometimes counterproductive method for protecting a defendant's right to a speedy trial").

**{12}** The factors to be considered in assessing an alleged speedy trial violation in district court, as enumerated in the rule, mirror the *Barker* factors, with the additional requirement that the complexity of the case must be determined to set the threshold for presumptive prejudice under *State v. Garza*, 2009-NMSC-038, 146 N.M. 499, 212 P.3d 387. *Compare* Rule 5-604(B), *with Serros*, 2016-NMSC-008, ¶ 5 (explaining the *Barker* factors). When balancing the *Barker* factors, "no one factor constitutes a necessary or a sufficient condition to find a violation of the right to a speedy trial." *State v. O'Neal*, 2009-NMCA-020, ¶ 15, 145 N.M. 604, 203 P.3d 135. However, "[i]f [a d]efendant fails to make a particularized showing of prejudice, the other three factors must weigh heavily in [the d]efendant's favor" to support a finding that a defendant's speedy trial right has been violated. *State v. Parrish*, 2011-NMCA-033, ¶ 32, 149 N.M. 506, 252 P.3d 730.

## II. Analysis of the *Barker* Factors

## A. The Length of Delay Weighs Slightly in Favor of Defendant

**{13}** We begin by determining whether Defendant has been presumptively prejudiced by the delay in bringing her to trial. The district court found, and the parties do not dispute, that this was a simple case for speedy trial purposes, making the threshold for presumptive prejudice 12 months. *See Garza*, 2009-NMSC-038, ¶ 48. The total time between Defendant's July 19, 2023, arraignment in magistrate court and the October 8, 2024, dismissal by the district court was 447 days. However, we conclude that two periods of delay should be excluded from the speedy trial calculation.

**{14}** First, Defendant spent 23 days considering the State's plea offer, all of which was excludable under the parties' agreement to exclude up to 30 days for that purpose. Despite Defendant's assertion that this period should be weighed neutrally because "[f]or the first *Barker* factor, calculating the degree of each party's fault in causing the delay is irrelevant," our case law is clear that time waived is excluded when calculating the total length of delay. *See State v. Valencia*, 2010-NMCA-005, ¶ 15, 147 N.M. 432, 244 P.3d 659 (concluding that an "express[] and conceded[]" six-month waiver did not count towards a defendant's speedy trial claim).

**{15}** Second, Defendant's case was temporarily dismissed for 29 days following the district court's first speedy-trial dismissal and its subsequent grant of the State's motion to reconsider. Defendant argues that this time should be weighed neutrally and attempts to distinguish her case from *State v. Grissom*, 1987-NMCA-123, 106 N.M. 555, 746 P.2d 661, *overruled on other grounds by Salandre v. State*, 1991-NMSC-016, ¶ 32, 111 N.M. 422, 806 P.2d 562. In *Grissom* we held that the period between indictment and dismissal "due to grand jury irregularities" does not count towards a speedy trial calculation. 1987-NMCA-123, ¶¶ 4, 31. Defendant claims that *Grissom* is "procedurally inapposite to a dismissal in magistrate court and refil[ing] in district court." But the

concern in *Grissom* was whether "defendants are free of restrictions on their liberty," and not the specific procedural posture of the case. *Id.* ¶ 31. We are not persuaded that the period during which Defendant's charges were dismissed should be treated differently than that in *Grissom. See also Work v. State*, 1990-NMSC-085, ¶ 5, 111 N.M. 145, 803 P.2d 234 (stating that time between dismissal and reindictment is not counted towards speedy-trial calculation), *holding modified by Garza*, 2009-NMSC-038, ¶ 17.

**{16}** After subtracting these excluded periods from the total time between arraignment and dismissal, the delay experienced by Defendant was 395 days. To be sure, this delay exceeded the 12-month threshold for presumptive prejudice for simple cases under *Garza*, but only by 30 days. This factor, therefore, weighs only slightly in favor of Defendant. *See Serros*, 2016-NMSC-008, ¶ 26 ("A delay that scarcely crosses the bare minimum needed to trigger judicial examination of the claim is of little help to a defendant claiming a speedy trial violation." (internal quotation marks and citation omitted); *see, e.g.*, *Garza*, 2009-NMSC-038, ¶¶ 23-24 (concluding that a delay of just over a month beyond the presumptively prejudicial threshold for simple cases weighed only slightly in favor of defendant).

## B.     The Reasons for Delay Weigh Slightly in Favor of Defendant

**{17}** We next discuss the reasons for the delay, regarding which "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. "[A] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). "[A] more neutral reason . . . should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government." *Id.* ¶ 26 (internal quotation marks and citation omitted). "Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay. . . . [W]e balance the reasonableness of the manner in which the [s]tate has moved a case toward trial against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question." *Id.* (internal quotation marks and citations omitted).

**{18}** "In addressing the reasons for delay, we examine the reasons given by the [s]tate to justify time lapses." *Valencia*, 2010-NMCA-005, ¶ 17. Here the State has divided the proceedings into, and Defendant has responded to, twelve discrete periods of time. The parties differ as to how these periods should be weighed, but Defendant does not materially disagree with the State's framing of the total delay. For its part, the district court's discussion of the reason-for-delay factor was limited to its own error in not rescheduling Defendant's trial.

**{19}** Conducting our de novo review, we have determined that of the 395 countable days of delay, 72 days weigh against Defendant, 135 days weigh against the State, and 188 days weigh neutrally. Of the delay attributable to the State, no period of delay indicates that there was "a deliberate attempt . . . to hamper the defense." *See Garza*, 2009-NMSC-038, ¶ 25. The State's delay was simply administrative or negligent,

including the district court neglecting to reschedule Defendant's trial, and therefore does not weigh heavily in favor of Defendant. *See State v. Steinmetz*, 2014-NMCA-070, ¶ 7, 327 P.3d 1145 (demonstrating that negligent or administrative delay includes delay caused by the court, such as "overcrowded courts" and "reassignment of judges"). Defendant does not dispute the characterization of the State's delay as administrative or negligent—other than arguing that the State's "openly admitted strategic purpose in its dismissal and refile policy" cannot "rationally" be assigned to Defendant. Rather, Defendant focuses her argument on how the delay should be weighed. Similarly, the delay attributable to Defendant also was administrative in nature, such as continuances to interview witnesses or delays caused by the filing of motions. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 35, 327 P.3d 1129 ("[T]he time required to respond to or hear a defendant's motion generally does not count against the government."). There is no evidence Defendant sought a tactical advantage through intentional delay. Thus, these delays weigh only slightly against Defendant.

**{20}** On balance, no period of delay during the case's pendency in the courts below weighs more than slightly against either Defendant or the State. Because the number of days of delay attributable to the State is greater than those attributable to Defendant, we weigh this factor slightly in Defendant's favor.

## C.   Defendant's Assertion of the Right Weighs Slightly in Favor of Defendant

**{21}** The third *Barker* factor is whether and how Defendant asserted her right to a speedy trial. "The frequency and force of the objections can be taken into account in considering the defendant's assertion, as well as whether an assertion is purely pro forma. Pro forma assertions are sufficient to assert the right, but are given little weight in a defendant's favor." *State v. Ochoa*, 2017-NMSC-031, ¶ 41, 406 P.3d 505.

**{22}** The parties agree that Defendant twice asserted her speedy trial right in the magistrate court, as well as filed two motions to dismiss on speedy trial grounds in the district court. The district court found that Defendant's assertions of the right were more than pro forma, but did not differentiate her assertions in the magistrate court from her speedy trial motions in the district court.

**{23}** Accepting without deciding that the district court was correct that Defendant's assertions were more than pro forma, this factor can only weigh slightly in favor of Defendant. The forcefulness of Defendant's two speedy trial motions in the district court are both undercut by the circumstances of the proceedings. The right was not asserted in the district court until Defendant's first filing of her speedy trial motion on March 12, 2024, seven business days before the trial setting. Such a last-minute assertion is given less weight. *See State v. Moreno*, 2010-NMCA-044, ¶ 33, 148 N.M. 253, 233 P.3d 782 ("[G]enerally, the closer to trial an assertion is made, the less weight it is given."); *see also O'Neal*, 2009-NMCA-020, ¶¶ 25-26 (determining that the defendant's assertion of his speedy trial right twenty-two days before trial did not weigh in his favor). There is also some indication in the record that Defendant may not have been fully prepared for trial when her first motion was filed. For example, Defendant had not yet disclosed a

conflict of interest between her counsel and one of the State's witnesses, and Defendant had not conducted a pretrial interview of the arresting officer.

**{24}** Defendant's second motion to dismiss on speedy trial grounds and assertion of the right, made on September 17, 2024, is contradicted somewhat by Defendant then requesting a continuance on October 4, 2024. A request for a continuance tends to "obviate[]" the speedy trial request. *State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061. Consequently, we hold that this factor weighs only slightly in favor of Defendant.

## D.    Defendant Has Not Made a Particularized Showing of Prejudice

**{25}** We finally look to whether Defendant has made a particularized showing of prejudice, which is "[t]he heart of the right to a speedy trial." *See Garza*, 2009-NMSC-038, ¶ 12. This factor decisively tips the balance in this case. *See id.* ¶ 40 (finding no speedy trial violation where the first three factors weighed slightly in favor of the defendant and there was no showing of particularized prejudice).

**{26}** To determine whether Defendant was prejudiced, we consider whether there was (1) oppressive pretrial incarceration; (2) undue anxiety and concern by the accused; and, most importantly, (3) impairment of Defendant's defense. *Id.* ¶¶ 12, 36. "In evaluating the first two types of prejudice, we recognize that some degree of oppression and anxiety is inherent for every defendant who is awaiting trial. Consequently, we weigh this factor in [a d]efendant's favor only where the pretrial incarceration or anxiety is undue." *Parrish*, 2011-NMCA-033, ¶ 32 (citation omitted). For the third type of prejudice, Defendant must articulate how the delay impaired her defense.

**{27}** First, Defendant was arrested but released on her own recognizance the following day, and was constrained only by standard pretrial conditions for the duration of the proceedings both in the magistrate and district courts. Defendant's release negated any prejudice resulting from oppressive pretrial incarceration and greatly mitigated any prejudice from loss of freedom.[2] *See State v. Castro*, 2017-NMSC-027, ¶ 12, 402 P.3d 688 (differentiating prejudice to a non-incarcerated defendant from one incarcerated during the pendency of their case; 32 months (approximately 970 days) between mistrial and second trial not held as a speedy-trial violation). We also note that, although the magistrate court had ordered Defendant to install an ignition interlock device in her vehicle, this never occurred and that condition was ultimately removed by the district court following Defendant's rearraignment. Defendant alleges she suffered stress and anxiety as a result of these conditions, but only in a general sense. And "we will not speculate as to . . . the degree of anxiety a defendant suffers." *Garza*, 2009-NMSC-038, ¶ 35.

---

[2]These conditions were to not consume alcohol, to notify the court of any changes of address, to maintain contact with her attorney, to not drive without a valid driver's license, and to not violate local, city, state, or federal laws.

**{28}** Defendant's assertion of particularized prejudice is that the State's charges resulted in the loss of her driver's license, and that the prolonged lack of a driver's license caused by the State's failure to bring her case to trial forced her into early retirement. Our speedy trial jurisprudence has recognized substantial prejudice arising from the loss of an existing job. *See State v. Johnson*, 1991-NMCA-134, ¶ 7, 113 N.M. 192, 824 P.2d 332. However, Defendant did not testify, present witnesses, or provide sworn affidavits to the district court to support this claim. Defendant's claims of prejudice are therefore merely argument. Our Supreme Court has said in similar circumstances that "[the d]efendant should have offered some actual evidence in the form of affidavits, testimony, or documentation in support of the allegations of lost employment. . . . Such evidence could have established that the delay in trial beyond the presumptive period caused the alleged prejudice as opposed to the original indictment." *Spearman*, 2012-NMSC-023, ¶ 39 (observing that defendant did not provide evidence showing that they were unable to obtain work in their licensed profession due to pending charges, resulting in filing for bankruptcy). Here, Defendant offered no evidence to support her assertion that the State's delay was the cause of her alleged hardships or early retirement, and how retiring early affected her income. Nor did the district court find any particularized prejudice in either of its orders of dismissal, instead claiming in its second order "[t]here is always prejudice . . . with any . . . delay."

**{29}** Finally, accepting without deciding that Defendant was prejudiced by the loss of her driver's license, reinstatement of that license is controlled by a separate administrative process through MVD. *See* NMSA 1978, § 66-8-112 (2015). The record does not indicate whether Defendant availed herself of this process. Without evidence, we cannot say that any delay caused by the State in this case resulted in Defendant's continued deprivation of her license. Consequently, we cannot conclude that Defendant suffered the particularized prejudice required by our speedy-trial jurisprudence. This is particularly true where the delay beyond the presumptive prejudice threshold is minimal.

**{30}** The speedy trial right necessarily pits "the societal interest in bringing an accused to trial" against the "threat to the fairness of the accused's trial." *Serros*, 2016-NMSC-008, ¶¶ 28, 73 (internal quotation marks and citations omitted). And our case law is clear that, absent an articulable threat to that fairness, the societal interest in a criminal trial should prevail.

**CONCLUSION**

**{31}** Our analysis of the *Barker* factors shows that the length of delay, the reason for delay, and the assertion of the right to a speedy trial weigh slightly in favor of Defendant. Defendant failed, however, to show any particularized prejudice. Accordingly, we hold that there was no violation of Defendant's right to a speedy trial. We reverse the district court's order of dismissal and remand for further proceedings consistent with this opinion.

**{32}   IT IS SO ORDERED.**

**KRISTOPHER N. HOUGHTON, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**SHAMMARA H. HENDERSON, Judge**