This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37139**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.

**DAVID W. LEWIS,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Emilio J. Chavez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Ben A. Ortega
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** Defendant David Lewis appeals his conviction for two counts of criminal sexual penetration of a minor (CSPM) under thirteen years of age, in violation of NMSA 1978, Section 30-9-11(D)(1) (2009), and two counts of CSPM between the ages of thirteen and eighteen, in violation of Section 30-9-11(E)(1). Defendant raises three issues: (1) he was denied his right to a speedy trial; (2) he was denied compulsory process; and (3) he was subjected to an unfair trial because of an outburst from the gallery. We affirm.

**Background**

**{2}**     Victim provided the following account of the nature and extent of Defendant's sexual abuse during her trial testimony. Victim had known Defendant since she was "four or five" years old. She was close friends with Defendant's daughter, and Victim's mother (Mother) often sent Victim to spend time at Defendant's home. Defendant "began molesting" Victim in approximately 2007, "soon after [her] sixth birthday." Victim recalled Defendant telling her to remove her clothing and to lie on his bed. Defendant touched her vagina with his hand during which he called Victim his princess and told her he was playing a game where he was the "monster kidnapping the princess." After a couple of months, Defendant began to touch her vagina "at least once every two weeks." Over the next eight years, Defendant penetrated Victim vaginally, anally, performed oral sex on Victim multiple times, and forced Victim to perform oral sex on himself.

**{3}**     In July 2015, Victim had a fight with Mother after Mother told Victim she had to stay with Defendant for the weekend. Victim went into her room, "started freaking out [and] having flashbacks" of the abuse and felt "ready to die." Rather than going to Defendant's house, Victim attempted suicide by taking sleeping pills. While hospitalized, Victim disclosed the abuse to Mother. Mother told the nurses about the sexual abuse who in turn contacted the police.

**{4}**     On October 1, 2015, the grand jury indicted Defendant on two counts of CSPM of a child under the age of thirteen and two counts of CSPM of a child at least thirteen years of age but less than eighteen. On September 14, 2017, Defendant filed a motion to dismiss for violation of his right to a speedy trial. The district court denied the motion, and trial commenced on October 31, 2017. A jury convicted Defendant of all four counts of CSPM. Defendant appeals.

**Discussion**

**I.     Defendant's Right to a Speedy Trial**

**{5}**     "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend. VI; *accord* N.M. Const. art. II, § 14. When evaluating a speedy trial issue, "[t]he United States Supreme Court gave four factors to consider in *Barker* [*v. Wingo*], 407 U.S. [514,] 530 [(1972)]: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant." *State v. Spearman*, 2012-NMSC-023, ¶ 17, 283 P.3d 272. "Each of these factors is weighed either in favor of or against the [s]tate or the defendant, and then balanced to determine if a defendant's right to a speedy trial was violated." *Id.* No one factor alone is dispositive, as "they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* ¶ 18 (internal quotation marks and citation omitted). When considering a speedy trial claim, we defer to the district court's factual findings supported by substantial evidence but review the *Barker* factors de novo. *Id.* ¶ 19.

## A. Length of Delay

**{6}** The first *Barker* factor—length of delay—serves two purposes. First, it guides the inquiry of whether a delay is presumptively prejudicial based on its length. *See State v. Garza*, 2009-NMSC-038, ¶ 15, 146 N.M. 499, 212 P.3d 387. Second, if the delay is presumptively prejudicial, it serves as a "triggering mechanism" for considering the other three factors. *State v. Serros*, 2016-NMSC-008, ¶ 22, 366 P.3d 1121. The presumptively prejudicial threshold is determined by the complexity of the case: twelve months for simple cases, fifteen months for intermediate cases, and eighteen months for complex cases. *Id.* Length of delay under *Barker* is an objective determination; it does not consider whether either party is at fault for causing the delay. *Id.* ¶ 26. In this case, the parties stipulated, and we agree, that this case is one of intermediate complexity for the purposes of the speedy trial analysis. *See State v. Montoya*, 2011-NMCA-074, ¶ 16, 150 N.M. 415, 259 P.3d 820 (noting that "[c]ases of intermediate complexity . . . seem to involve numerous or relatively difficult criminal charges and evidentiary issues, numerous witnesses, expert testimony, and scientific evidence").

**{7}** "[T]he right to speedy trial attaches when the defendant becomes the 'accused' which occurs with a formal indictment or information or arrest." *State v. Talamante*, 2003-NMCA-135, ¶ 4, 134 N.M. 539, 80 P.3d 476. Defendant was indicted on October 1, 2015, and thus, approximately twenty-five months passed between Defendant's indictment and trial.[1] The delay in this case exceeds the presumptively prejudicial threshold by approximately ten months and, therefore, we proceed to assess the *Barker* factors, beginning with the weight to be given the length of delay. *See State v. Suskiewich*, 2016-NMCA-004, ¶ 7, 363 P.3d 1247.

**{8}** "[T]he greater the delay, the more heavily it will potentially weigh against the [s]tate." *Garza*, 2009-NMSC-038, ¶ 24. Defendant argues that the length of delay should weigh heavily in his favor because there was delay of eleven months beyond the threshold for intermediate cases. However, as we noted above, the time between Defendant's indictment and trial was twenty-five months, rendering a ten-month delay beyond the presumptive threshold. Nonetheless, even using Defendant's calculation of an eleven-month delay beyond the presumptive threshold, we would only weigh the length of the delay moderately against the State. *Suskiewich*, 2016-NMCA-004, ¶ 8 (weighing nine-month delay beyond the fifteen-month threshold in intermediate case "moderately" against the state); *see also State v. Montoya*, 2015-NMCA-056, ¶ 15, 348 P.3d 1057 (weighing a twelve-month delay beyond the fifteen-month threshold in an intermediate case "moderately to heavily" against the state). Therefore, we weigh this factor moderately against the State.

---

1For the first time on appeal, Defendant appears to argue that the speedy trial clock was triggered on his date of arrest. However, Defendant relied on the date of his arraignment for his motion to dismiss below. We base our calculation on Defendant's date of indictment, but as we explain in our analysis, using Defendant's arrest date would not change the outcome. *See State v. Urban*, 2004-NMSC-007, ¶ 12, 135 N.M. 279, 187 P.3d 1061 (noting that "the right attaches when the defendant becomes an accused, that is, by a filing of a formal indictment or information or arrest and holding to answer" (internal quotation marks and citation omitted)).

## B.    Reason for Delay

**{9}**    The second factor, the reason for the delay, requires us to evaluate the reason the state "assigns to justify the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). "The reasons for a period of delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Id.* (internal quotation marks and citation omitted). We "accord weight to the frequency and force of the defendant's objections to the delay[,]" and "analyze the defendant's actions with regard to the delay." *Id.* ¶ 32 (internal quotation marks and citations omitted). There are three types of delay attributable to the state, which are weighed against the state in varying ways. *See State v. Castro*, 2017-NMSC-027, ¶ 22, 402 P.3d 688. First, deliberate attempts by the state to delay the trial to hamper the defense weigh heavily against the state. *Id.* Second, "neutral delays, including negligence or overcrowded courts that should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant." *Id.* (alteration, internal quotation marks, and citation omitted). Third, there are "appropriate" delays for which there is "a valid reason, such as a missing witness." *Id.* (internal quotation marks and citation omitted). These are considered neutral and do not weigh against the state. *See id.* Finally, delay caused by a defendant weighs against the defendant. *See Serros*, 2016-NMSC-008, ¶ 29.

**{10}**    The first period of delay is from the date of indictment, October 1, 2015, to the first trial setting on August 1, 2016. During this period, the State and Defendant filed customary pleadings one expects to see filed in criminal cases. Both parties filed excusal of judges, the State filed requests for scheduling orders, discovery, and pretrial interviews, produced discovery, and filed various other pleadings. Defendant also filed motions during this period. Because the case was proceeding with customary promptness from indictment until the first trial date, we weigh this ten-month period of delay neutrally. *State v. Valencia*, 2010-NMCA-005, ¶ 18, 147 N.M. 432, 224 P.3d 659 (stating that "where a case moves toward trial with customary promptness, the period of time is to be weighed neutrally between the parties" (internal quotation marks and citation omitted)).

**{11}**    The second period of delay is from August 1, 2016, to the second trial setting on January 9, 2017. A pretrial conference was held on July 11, 2016, to determine if the parties were ready to proceed to trial on August 1. Neither defense counsel nor Defendant appeared for the pretrial conference, nor did either provide an explanation for their absence. However, the State moved for a continuance of the trial setting and as grounds, informed the court that both parties still had to complete pretrial interviews and address additional discovery issues. The district court granted the State's motion to continue and reset the case for trial on January 9, 2017. During this period, the State produced discovery, disclosed witness information, and attempted to schedule witness interviews for Defendant. Because both parties were proceeding toward trial and the State was seeking to schedule interviews for Defendant, we conclude that the five-month period of delay between August 2, 2016, to January 9, 2017, weighs neutrally.

**{12}** The third period of delay is from January 9, 2017, to May 15, 2017, the third trial setting in this matter. Defendant filed two separate requests to continue the January 9 trial setting. Additionally, at the pretrial conference on November 30, 2016, defense counsel again requested additional time to prepare for trial. Defendant alleged that due to the State's unavailability, he had been unable to interview Victim. However, the record reveals that in October 2016, the State informed defense counsel of available dates to interview Victim, but defense counsel did not respond. The district court ultimately granted Defendant's motion to continue and reset the trial for May 15, 2017. Because Defendant was responsible for causing the delay during this period, we conclude that the four-month period of delay between January 9, 2017, and May 15, 2017, weighs against Defendant.

**{13}** The fourth period of delay, from May 15, 2017, to the fourth trial setting on September 18, 2017, weighs against the State. The State filed a stipulated motion to continue the May 15 trial setting to serve an uncooperative witness with an out-of-state subpoena. The State requested a trial date in July, but because of a crowded docket, the district court reset the trial for September 18, 2017. Although Defendant concurred in the motion, the four-month period between May 15 and September 18 weighs against the State. *See State v. Flores*, 2015-NMCA-081, ¶ 18, 355 P.3d 81 (weighing a period of delay caused by administrative burdens such as a congested docket against the state).

**{14}** The final period of delay, from September 18, 2017, to the trial date on October 30, 2017, weighs against Defendant. Defendant filed a motion to dismiss on September 15, 2017—just three days before trial—claiming a speedy trial violation as well as discovery violations. In his supplemental motion to dismiss, Defendant requested a continuance in order to complete his investigation. On the same day, Defendant also filed a Rule 11-412 NMRA motion to admit evidence of Victim's past sexual conduct. *See* Rule 11-412(B) (permitting the court to admit evidence of a victim's past sexual conduct when it is material and relevant, so long as its inflammatory or prejudicial nature does not outweigh its probative value). Defendant delayed interviewing both Victim and the investigating detective until just six days before the scheduled trial, despite the State identifying them at least two years prior. The district court warned Defendant that the motions were untimely but granted the continuance to ensure a fair trial and allow enough time for the hearing required for a Rule 11-412 motion. The district court reset trial for October 30, 2017. This final period of delay of just over one month, weighs against Defendant.

**{15}** In sum, approximately fifteen months of delay weighs neutrally, four months weigh against the State, and six months weigh against Defendant. Therefore, on balance, this *Barker* factor does not weigh against the State and should be weighed neutrally. *See Valencia*, 2010-NMCA-005, ¶ 25 (holding that where six months of the delay weighed slightly against the state and nine months weighed neutrally, second *Barker* factor should not be weighed against the state); *State v. Ortiz-Burciaga*, 1999-NMCA-146, ¶ 34, 128 N.M. 382, 993 P.2d 96 (concluding that where all of the delay

weighed either neutrally or against the defendant, second *Barker* factor weighed slightly in favor of the state).

## C.    Assertion of Right

**{16}**    A defendant's assertion of his speedy trial right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. Thus, we "accord weight to the frequency and force of the defendant's objections to the delay[,]" and "analyze the defendant's actions with regard to the delay." *Garza*, 2009-NMSC-038, ¶ 32 (internal quotation marks and citation omitted). "[G]enerally, the closer to trial an assertion is made, the less weight it is given." *State v. Moreno*, 2010-NMCA-044, ¶ 33, 148 N.M. 253, 233 P.3d 782.

**{17}**    Defendant asserted his right to a speedy trial four days after his indictment in an entry of appearance and again fourteen days after indictment in a motion for discovery. Defendant's demands were sufficient to assert his right. *See Garza*, 2009-NMSC-038, ¶ 34 (stating that a single demand is sufficient to assert the right to speedy trial). However, we give little weight to these two pro forma assertions. *See Urban*, 2004-NMSC-007, ¶ 16 (acknowledging that "pro forma motions are generally afforded relatively little weight in this analysis"). Defendant next asserted his right to a speedy trial in a motion to dismiss filed on September 14, 2017, two days before the September 16, 2017, trial setting and again in a second motion to dismiss filed on the morning of jury selection. While motions to dismiss based on speedy trial grounds constitute an assertion of the right, we do not weigh them heavily against the state. *State v. Johnson*, 1991-NMCA-134, ¶ 5, 113 N.M. 192, 824 P.2d 332 (concluding that the "[d]efendant asserted his right to a speedy trial by filing a motion to dismiss for delay" and that "[t]his factor . . . weighed in favor of [the] defendant, but not heavily").

**{18}**    Moreover, we view Defendant's assertions in light of his repeated requests for continuances, concurrence with the State's continuances, and the speedy trial motion's proximity to the trial date. *See State v. Ochoa*, 2017-NMSC-031, ¶ 42, 406 P.3d 505 (noting that an evaluation of a defendant's assertion of the right "includes accounting for a defendant's actions with regard to the delay"). As such, this factor weighs only slightly in Defendant's favor.

## D.    Prejudice

**{19}**    Finally, we consider the prejudice to Defendant resulting from the delay in bringing him to trial. *See Barker*, 407 U.S. at 532. "The 'heart' of the speedy trial right 'is preventing prejudice to the accused.' " *State v. Lujan*, 2015-NMCA-032, ¶ 20, 345 P.3d 1103 (quoting *Garza*, 2009-NMSC-038, ¶ 12). Prejudice to the accused is examined in light of three interests: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Garza*, 2009-NMSC-038, ¶ 35.

**{20}** A "degree of anxiety is inherent for every defendant awaiting trial." *Lujan*, 2015-NMCA-032, ¶ 20 (omissions, internal quotation marks, and citation omitted). Therefore, the prejudice factor weighs in the defendant's favor "only where the anxiety suffered is undue." *Id.* (omission, internal quotation marks, and citation omitted). To determine if the anxiety suffered is undue, "[t]he operative question is whether the anxiety and concern, once proved, has continued for an unacceptably long period." *Salandre v. State*, 1991-NMSC-016, ¶ 32, 111 N.M. 422, 806 P.2d 562, *holding modified on other grounds by Garza*, 2009-NMSC-038, ¶ 22. However, "[t]he evidence must . . . establish that the alleged prejudice occurred as a result of the delay in trial beyond the presumptively prejudicial threshold as opposed to the earlier prejudice arising from the original indictment." *Montoya*, 2015-NMCA-056, ¶ 25.

**{21}** Defendant argues he suffered from undue anxiety due to "elevated community hostility." Specifically, Defendant contends he suffered undue anxiety because he was attacked prior to being charged with the offense and because "[t]he trial judge spent considerable time admonishing the spectators for their inappropriate conduct [during trial who] . . . mistreated" Defendant and his attorney. First, the injury suffered by Defendant prior to being charged, while unfortunate, is not attributable to the delay in getting the case to trial. *See State v. Samora*, 2016-NMSC-031, ¶ 22, 387 P.3d 230 (holding that the defendant failed to establish prejudice because the "[d]efendant did not articulate any particularized prejudice that he suffered *as a result of* the lengthy delay in this case" (emphasis added)). Defendant also failed to show that the outbursts from the gallery during trial were specifically caused by the delay of his trial. *See id.*; *see also State v. Brown*, 2017-NMCA-046, ¶ 33, 396 P.3d 171 (stating that the defendant must demonstrate "particularized prejudice" showing how the delay caused "oppressive pretrial incarceration" or impaired his ability to put on a defense (internal quotation marks and citations omitted)). Because Defendant offered no evidence that the anxiety was caused by the delay, we conclude he has failed to prove particularized prejudiced to be weighed against the State. *See Garza*, 2009-NMSC-038, ¶ 37 (holding that "some non-particularized prejudice is not the type of prejudice against which the speedy trial right protects" (alteration, internal quotation marks, and citation omitted)).

**{22}** Defendant also argues that his defense was impaired as a result of the State's belated disclosures of witness information. The impaired defense aspect of prejudice is "the most serious . . . because the inability of a defendant . . . to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532. To establish this type of prejudice, Defendant must show "with particularity what exculpatory testimony would have been offered and . . . that the delay caused the witness's unavailability." *Garza*, 2009-NMSC-038, ¶ 36 (internal quotation marks and citation omitted). Defendant broadly contends that if the State had timely disclosed two potentially exculpatory witnesses—Keith McHenry and H.J.—they would have been more likely to testify in favor of Defendant at trial. However, Defendant has failed to direct this Court to when McHenry and H.J. were disclosed, what exculpatory information they possessed, or how earlier disclosure would have secured their testimony. *See Brown*, 2017-NMCA-046, ¶ 41 ("To show this type of prejudice, [the d]efendant must show with particularity what exculpatory evidence would have been offered and that the delay caused the

evidence's unavailability." (internal quotation marks and citation omitted)); *see also State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (providing that appellate courts are under no obligation to review unclear or undeveloped arguments). Based on our review of the record, Defendant was aware of McHenry and H.J. in September 2016, when the State disclosed an audio recording. It is true that the interviews conducted on September 12, 2017, clarified the importance of those witnesses; however, these belated interviews were not the fault of the State, as discussed above, nor were they the result of the late witness disclosure. Therefore, Defendant has not established prejudice arising from an impaired defense.

## E.    Balancing of *Barker* Factors

{23}    Because Defendant has not made a particularized showing of actual prejudice, his claim must fail unless the other factors "weigh heavily" against the State. *See Garza*, 2009-NMSC-038, ¶¶ 38-40 (holding that unless the other *Barker* factors "weigh heavily in the defendant's favor," the "defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect"). They do not. While the length of delay exceeded the presumptively prejudicial threshold by approximately ten months, the reasons for delay weighs neutrally, and Defendant's assertion of his speedy trial right weighs slightly in favor of the State. We therefore conclude the district court did not err in denying Defendant's motion to dismiss for violation of his right to a speedy trial.

## II.    Compulsory Process

{24}    Defendant argues that the district court failed to uphold compulsory process by denying Defendant's request for a continuance on the morning of jury selection. "The grant or denial of a continuance is within the sound discretion of the trial court, and the burden of establishing abuse of discretion rests with the defendant." *State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

{25}    *State v. Torres* requires the district court to consider several factors in deciding whether to grant a continuance. 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20 (stating that "[i]n the context of a continuance requested for the purpose of obtaining a witness's testimony, these factors serve to balance a criminal defendant's constitutional right to compulsory process, with the court's interest in controlling its docket and the public's interest in the efficient administration of justice without unnecessary delay" (citation omitted)). The factors include: (1) "the length of the requested delay, [(2)] the likelihood that a delay would accomplish the movant's objectives, [(3)] the existence of previous continuances in the same matter, [(4)] the degree of inconvenience to the parties and the court, [(5)] the legitimacy of the motives in requesting the delay, [(6)] the fault of the movant in causing a need for the delay, and [(7)] the prejudice to the movant

in denying the motion." *Id.* Moreover, Defendant must also demonstrate that he acted with "reasonable diligence" in securing the witness's testimony to establish error. *See id.* ¶ 11. Applying the *Torres* factors to this case, we conclude the district court was within its discretion in denying Defendant's motion for a continuance for the reasons explained below.

**{26}** The first and second factors, length of the requested delay and the likelihood that a delay would accomplish the movant's objectives, do not support Defendant's position. Defendant's trial started on October 30, 2017. However, there were multiple continuances of the trial prior to this date, two of which were requested by defense counsel. Defendant requested a continuance of the October 30 trial setting for the stated purpose of securing the appearance of witnesses H.J. and McHenry for trial. The record is silent as to how long a continuance Defendant was requesting. Moreover, despite defense counsel subpoenaing H.J. for the October 30 trial setting by posting a subpoena and emailing her a subpoena, H.J. failed to appear. And, according to defense counsel, H.J.'s mother would not allow her to appear to testify irrespective of when the trial was scheduled. Consequently, Defendant did not demonstrate a strong likelihood that a continuance would have resulted in H.J. testifying at a later date. Further, as stated previously, Defendant failed to direct this Court to what exculpatory information McHenry possessed, or how a continuance would have secured McHenry's presence and assisted the defense at trial.

**{27}** The third factor weighs against Defendant, as there were four prior continuances in this matter, two of which were at the request of Defendant. Significantly, the continuance prior to the October 30 trial setting was not only for the court to hear motions filed by Defendant, but also because defense counsel represented to the court that he needed more time to subpoena H.J. The fourth factor does not support Defendant's position, as his request for a continuance was made on the day of trial and without explanation as to why the continuance could not have been requested earlier. Further, as for the fifth factor, Defendant's motives in requesting a continuance are unclear because, again, Defendant told the district court that H.J. was unlikely to testify at trial, delayed timely conducting pretrial interviews until shortly before trial, and was responsible for much of the delay in this case. And, according to Defendant's investigator, Defendant already had multiple recordings with H.J. in his possession and did not list McHenry as a witness until two days prior to trial, despite being known to Defendant well before.

**{28}** Finally, in applying the prejudice factor "[w]e do not ask whether the evidence was critical but, instead, whether [the defendant] made a plausible showing of how the witness's testimony would have been both material and favorable to his defense." *Torres*, 1999-NMSC-010, ¶ 12 (alteration, internal quotation marks, and citation omitted). Defendant argues only generally that H.J.'s and McHenry's testimony would have been "exculpatory" and supported his theory of the case but fails to make a plausible showing of why the evidence was material and favorable. Notably, Defendant's entire argument rests on the assumption that Defendant could successfully secure the presence of the witnesses. We conclude that the district court did not abuse

its discretion in denying Defendant's last-minute request for a continuance. *See State v. Aragon*, 1997-NMCA-087, ¶ 22, 123 N.M. 803, 945 P.2d 1021 ("The trial court has broad discretion in granting or denying a motion for a continuance, and absent a demonstrated abuse resulting in prejudice to the defendant, there is no basis for reversal.").

### III. Gallery Outbursts

**{29}** Defendant's final argument is that the district court abused its discretion in not granting a mistrial due to disruptions and outbursts from individuals seated in the gallery. We review the district court's denial of a motion for mistrial for an abuse of discretion. *State v. Vanderdussen*, 2018-NMCA-041 ¶ 4, 420 P.3d 609. An abuse of discretion occurs when the ruling is "clearly against the logic and effect of the facts and circumstances before the court." *State v. Hernandez*, 2017-NMCA-020, ¶ 14, 388 P.3d 1016 (internal quotation marks and citation omitted). The district court's decision should only be overturned if the court acted in an arbitrary, erroneous, or unwarranted manner. *State v. Swick*, 2010-NMCA-098, ¶ 33, 242 P.3d 462, *aff'd in part, rev'd in part on other grounds*, 2012-NMSC-018, 279 P.3d 747.

**{30}** During trial, several outbursts occurred from the gallery outside of the presence of the jury. The first and second outburst from a woman—who later proved to be Victim's Mother—occurred when she first criticized the district court's procedures and then claimed that one of the jurors was a friend of Defendant, which was an unsubstantiated allegation. The court then addressed Mother outside the presence of the jury. A third outburst occurred when Mother complained that the witnesses should not be permitted to remain in the courtroom during trial. The district court explained the rule of exclusion was not invoked, and again asked that the audience "not cause a mistrial." Defendant moved for a dismissal or in the alternative, a mistrial, but the district court denied the motion.

**{31}** Defendant argues that the district court should have conducted individual voir dire of the jurors and provided a curative instruction to the jury if the outbursts were overheard, in accordance with *Swick*. In *Swick*, the gallery outburst was by the defendant, who stood up and made exclamations in front of the jury and was then restrained by security. *Id.* ¶ 30. This Court held that the district court's voir dire of the individual jurors and subsequent curative jury instruction was not an abuse of discretion. *Id.* ¶¶ 31, 34. Our case is distinguishable from *Swick*, as the record indicates that the jury did not witness any of the gallery outbursts. Defendant argues that the district court should have ensured "that the conduct of the mob had not compromised the juror's continued ability to be fair and impartial" but does not indicate in the record when the jurors would have been affected by the outburst. Because there is no indication that the outbursts from the gallery ever occurred in the presence of the jury, we conclude that the district court did not abuse its discretion in denying Defendant's motion for a mistrial.

### Conclusion

**{32}** For the foregoing reasons, we affirm.

**{33}  IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**JACQUELINE R. MEDINA, Judge**