This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36220**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**RAYMOND KLEINEGGER,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**David N. Williams, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Gregory B. Dawkins, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Defendant Raymond Kleinegger appeals his conviction for child solicitation by electronic communication device (appearing for a meeting with a child over thirteen, under sixteen) in violation of NMSA 1978, Section 30-37-3.2(A), (C)(1) (2007). Defendant argues that (1) he was denied his right to a speedy trial; (2) he suffered a violation of his right to due process when the district court denied his motions to dismiss based on the State's untimely disclosure of discoverable evidence; (3) he was

entrapped; and (4) there was insufficient evidence to support his conviction. Unpersuaded, we affirm.

## BACKGROUND[1]

**{2}** Police began investigating Defendant in January 2014 after a woman reported to them that her fifteen-year-old daughter had been having sexually-explicit online conversations with adult men. Detective Jacob Storey of the Albuquerque Police Department obtained Defendant's phone number from the child and initiated a text-message conversation with Defendant using the name "Lulu," which the child had used in her conversations with Defendant. Defendant quickly turned the conversation sexual and suggested a meeting. As "Lulu," Officer Storey agreed to meet and suggested they do so at a gas station in northeast Albuquerque. Defendant appeared for the February 10, 2014, meeting and was arrested. He was twenty-one years old at the time. After protracted pretrial proceedings, Defendant waived his right to a jury trial and stipulated to the State's account of the facts. The district court returned a guilty verdict after a brief bench trial, and Defendant appeals.

## DISCUSSION

### I. Defendant Did Not Suffer a Violation of His Right to a Speedy Trial

**{3}** "The right of the accused to a speedy trial is guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution." *State v. Spearman*, 2012-NMSC-023, ¶ 16, 283 P.3d 272. In determining whether a defendant has been deprived of the right to a speedy trial, our courts apply the four-factor balancing test that the U.S. Supreme Court articulated in *Barker v. Wingo*, 407 U.S. 514 (1972): "(1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. "On appeal, we give deference to the district court's factual findings, but we review the weighing and the balancing of the *Barker* factors de novo." *State v. Deans*, 2019-NMCA-015, ¶ 5, 435 P.3d 1280 (internal quotation marks and citation omitted).

### A. Length of Delay

**{4}** "The first factor, length of delay, is both the threshold question in the speedy trial analysis and a factor to be weighed with the other three *Barker* factors." *State v. Ochoa*, 2017-NMSC-031, ¶ 12, 406 P.3d 505. An inquiry into the other three *Barker* factors is only necessary when the length of delay is "presumptively prejudicial," *State v. Garza*, 2009-NMSC-038, ¶ 23, 146 N.M. 499, 212 P.3d 387 (internal quotation marks and citation omitted), because it exceeds the reasonable guideline for commencing trial,

---

[1]In this memorandum opinion, given the parties' familiarity with the case, we provide a brief summary of the factual and procedural background, reserving additional pertinent facts for our discussion of Defendant's arguments on appeal.

taking into account the complexity of the case. *Ochoa*, 2017-NMSC-031, ¶ 12. We defer to the district court's finding that this was a simple case, *see id.* ¶ 15, in which a delay of twelve or more months in bringing the case to trial required further inquiry into the other three *Barker* factors. *Garza*, 2009-NMSC-038, ¶ 2. As the length of a presumptively prejudicial delay increases, so does its weight against the State. *Ochoa*, 2017-NMSC-031, ¶ 14.

**{5}** Because Defendant's release from jail following his arrest was conditioned on posting bond, we measure the length of delay from the date of his earlier arrest rather than the date of his indictment. *Compare State v. Marquez*, 2001-NMCA-062, ¶¶ 10-11, 130 N.M. 651, 29 P.3d 1052 (agreeing with the parties that the defendant's right to a speedy trial attached when he was arrested because, thereafter, "criminal charges were pending against [the d]efendant and he was subject to the trial court's conditions of release which acted as a restraint upon his freedom"), *with State v. Sanchez*, 1989-NMCA-001, ¶¶ 7-8, 108 N.M. 206, 769 P.2d 1297 (holding that the defendant's right to a speedy trial attached when he was indicted because his "arrest alone, without posting bond, imposition of restrictive conditions of release, or being held to answer for unresolved criminal charges[,]" did not trigger the right). Measuring from Defendant's arrest on February 10, 2014, to his trial on August 15, 2016, it took approximately thirty months for the State to bring this simple case to trial, eighteen months longer than was reasonable under the applicable guideline. *See Garza*, 2009-NMSC-038, ¶ 2. The district court found that, even measuring from Defendant's indictment, the length of delay weighed heavily against the State. The parties do not dispute that finding on appeal, and we likewise conclude that the thirty-month delay in this simple case weighs heavily against the State.

## B.     Reason for Delay

**{6}** Because "the burden of persuasion rests on the [s]tate to demonstrate that, on balance, there was no violation of the right to a speedy trial[,]" *Ochoa*, 2017-NMSC-031, ¶ 14, we scrutinize the reasons the State has given for each period of delay and determine whether the reasons for delay "heighten or temper the prejudice to the defendant." *Serros*, 2016-NMSC-008, ¶ 29 (internal quotation marks and citation omitted); *see also State v. Valencia*, 2010-NMCA-005, ¶ 19, 147 N.M. 432, 224 P.3d 659 (explaining that, unless the state demonstrates "why a particular pretrial time lapse was both inevitable and wholly justifiable," the lapse weighs against the state (internal quotation marks and citation omitted)). We recognize four discrete periods within the thirty-month delay in this case and consider each in turn.

### 1.     Three Months Between Arrest and Indictment

**{7}** The State has not offered any justification for the three-month delay between Defendant's arrest and his indictment during which charges were pending in metropolitan court. *Cf. Valencia*, 2010-NMCA-005, ¶¶ 19-20 (weighing against the state, in the absence of any justification for it, a one-month delay between arrest and indictment during which charges were pending in magistrate court). Because nothing in

the record suggests that the State caused this delay intentionally or in bad faith, we conclude that the delay was due to negligence and weigh it slightly against the State. *See Garza*, 2009-NMSC-038, ¶ 28 (characterizing the state's inaction between the filing of charges in magistrate court and the later dismissal of those charges and their reinstatement in district court as negligent delay in the absence of evidence that it was intentional or in bad faith and weighing four months of such delay slightly against the state).

## 2.     Twelve Months Between Indictment and the Original Trial Date

**{8}**     The State argues that the district court was correct in finding that, in the approximately twelve months between Defendant's indictment and the original trial date, the case was proceeding toward trial with "customary promptness" and, therefore, this period does not weigh against either party. Although the trial did not occur as originally scheduled, we see nothing in the record that makes us doubt the district court's finding that neither party caused any delay in the first twelve months following Defendant's indictment. Accordingly, we conclude that the twelve-month period between Defendant's indictment and the original trial date does not weigh against either party. *Cf. State v. Moreno*, 2010-NMCA-044, ¶ 13, 148 N.M. 253, 233 P.3d 782 (holding that, although it may have been true that the state failed to provide timely and complete witness lists in the months following the defendant's arraignment, the record did not show that the failure "detrimentally affected the progress of the case at [that] preliminary point").

## 3.     Fourteen Months Between Original and July 2016 Trial Dates

**{9}**     We also agree with the State that the district court was correct in finding that the next fourteen months of administrative delay weigh slightly against the State. *See generally Garza*, 2009-NMSC-038, ¶ 26 ("[T]he ultimate responsibility for [negligent or administrative delay] must rest with the government rather than with the defendant." (internal quotation marks and citation omitted)). Delay that "falls within the administrative burdens on the criminal justice system, such as overcrowded courts, . . . is considered negligent delay and is weighed against the [s]tate" relative to its length. *Id.* ¶¶ 29-30; *State v. Flores*, 2015-NMCA-081, ¶ 9, 355 P.3d 81 ("[O]ur tolerance of negligent or administrative delay varies inversely with its protractedness." (alteration, internal quotation marks, and citation omitted)). Although Defendant represented to the district court before the rescheduling of the original trial date that significant discovery remained outstanding, the record indicates that the trial was postponed because of administrative pressures on the court, not because of the State's handling of the case. *See generally* Rule LR2-400(B)(1), (3) NMRA (2014) (calling for the reassignment and rescheduling of criminal cases that had been filed in the Second Judicial District Court earlier than July 1, 2014).[2] We thus affirm the district court's finding that this period of delay was administrative and conclude that the fourteen-month period between the May 2015 and July 2016 trial dates weighs against the State, but not heavily. *Cf. State v. Gallegos*, 2016-NMCA-076, ¶¶ 33-34, 387 P.3d 296 (declining,

---

2Pursuant to Supreme Court Order No. 16-8300-015, former LR2-400 (2014) was recompiled and amended as LR2-308 NMRA, effective December 31, 2016.

in a simple case, to weigh "fourteen months and three weeks of negligent and administrative delay . . . heavily against the [s]tate").

### 4.     One Month Between July 2016 and August 2016 Trial Dates

**{10}**     We disagree with the State's contention, and the district court's ruling, that the final month of delay is attributable to Defendant. Although the delay resulted from Defendant's request for a continuance, the continuance was meant to remedy the State's untimely disclosure of discoverable evidence, *see generally* Rule 5-501(A)(6) NMRA, by affording the defense an opportunity to interview potential witnesses identified in that evidence. Starting in November 2014, the defense on numerous occasions requested the police report that named those potential witnesses, but the State did not furnish it until May 2016. Because no continuance would have been necessary if the State had attended to Defendant's request earlier, we conclude that the final month of delay resulted from the State's bureaucratic indifference. *Cf. Moreno*, 2010-NMCA-044, ¶¶ 27-29 (weighing a period of delay against the state even though the defendant had stipulated to continuances because "[t]he [s]tate's inability to schedule essential witness interviews despite its repeated assurances that it would do so constitute[d] bureaucratic indifference"). *See generally State v. Palacio*, 2009-NMCA-074, ¶ 17, 146 N.M. 594, 212 P.3d 1148 ("It is well established that bureaucratic indifference weighs against the [s]tate and can establish a speedy trial violation."). Delay that is the result of bureaucratic indifference weighs more heavily against the state than negligent delay but not as heavily as intentional delay. *State v. Laney*, 2003-NMCA-144, ¶ 17, 134 N.M. 648, 81 P.3d 591. Therefore, we conclude that the final month of delay weighs moderately against the State.

### 5.     Summary

**{11}**     We conclude that, of the thirty months between Defendant's arrest and his trial, twelve do not weigh against either party; seventeen—three months prior to indictment and fourteen months between the original and July 2016 trial dates—weigh slightly against the State; and one month weighs moderately against the State. Because seventeen of the eighteen presumptively prejudicial months of delay weigh slightly against the State, we weigh this factor slightly against the State overall.

### C.     Assertion of the Right

**{12}**     We consider the timing and force of Defendant's objections to the delay "as an indication of whether [he] was denied needed access to [a] speedy trial over his objection or whether the issue was raised on appeal as afterthought." *Garza*, 2009-NMSC-038, ¶ 32 (internal quotation marks and citation omitted). Defendant made a demand for a speedy trial after the State moved to amend the indictment nearly a year after the original indictment. Defendant reasserted his right to a speedy trial approximately three months before the July 2016 trial date by moving to dismiss on the basis of a violation of that right. Like the district court, we conclude that Defendant's assertion of the right was timely and with enough vigor that this factor weighs against

the State. However, unlike the district court, we weigh Defendant's assertion of the right more than slightly against the State because Defendant evidenced his persistence in requesting discovery from the State and moving the case toward trial through exhibits attached to his speedy trial motion. *Cf. State v. Montoya*, 2015-NMCA-056, ¶¶ 23-24, 348 P.3d 1057 (weighing the factor "slightly to moderately" against the state in part because the defendant's behavior reflected a "persistent effort[]" to move the case forward and was consistent with his three assertions of the right).

## D.    Prejudice

**{13}**    Because not all of the three preceding factors weigh heavily against the State, we will reverse only upon a showing of "particularized prejudice of the kind against which the speedy trial right is intended to protect." *Garza*, 2009-NMSC-038, ¶ 39. The speedy trial right is intended (1) to prevent undue and oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to safeguard against impairment of the defense. *Id.* ¶ 12.

**{14}**    Defendant argues that he suffered prejudice because the pending charges "impacted his ability to work" in his field. At the hearing on Defendant's speedy trial motion, the district court accepted several of defense counsel's assertions as offers of proof, including an assertion that Defendant had applied for either 200 or 300 jobs without success even after an amendment to his conditions of release in 2014 authorized him to access the Internet, which he needed for his vocation. "Loss of employment, especially being unable to work in one's licensed profession, is a consequence of delay that a reviewing court cannot ignore." *Spearman*, 2012-NMSC-023, ¶ 38. However, *Spearman* put litigants on notice that, to demonstrate particularized prejudice through a lack of employment, a defendant must offer evidence that the lack of employment resulted from the presumptively prejudicial period of delay and not from the original charge or charges. *Id.* ¶ 39. Because Defendant has not shown that his inability to find a job was the result of the delay in resolving the charges pending against him, *cf. id.* ¶¶ 38-39, we hold that Defendant has not demonstrated particularized prejudice. *Cf. State v. Prieto-Lozoya*, 2021-NMCA-019, ¶ 48, 488 P.3d 715 (reasoning that the defendant's testimony that he had difficulty finding a job was "insufficient to distinguish [the d]efendant's anxiety, concern, and disruption of life from that befalling any" criminal defendant).

## E.    Balancing the Factors

**{15}**    The first three *Barker* factors weigh in Defendant's favor to some degree. The delay in this case was approximately thirty months, eighteen of which are presumptively prejudicial. However, absent a showing of particularized prejudice, we will not find a speedy-trial violation unless each of the other three factors weighs heavily against the State. *See Garza*, 2009-NMSC-038, ¶¶ 39-40. Because Defendant has not demonstrated *particularized* prejudice and, of the other factors, only the length of delay weighs heavily against the State, we hold that Defendant did not suffer a violation of his right to a speedy trial when he experienced one month of delay that was attributable to

bureaucratic indifference and seventeen months of negligent and administrative delay. *Compare Gallegos*, 2016-NMCA-076, ¶¶ 33-34 (holding that approximately fifteen months of negligent and administrative delay did not violate the defendant's right to a speedy trial in a simple case where the defendant had not shown particularized prejudice), *with State v. Taylor*, 2015-NMCA-012, ¶¶ 11-12, 14, 16-17, 25, 343 P.3d 199 (holding that, even without a showing of particularized prejudice, approximately nineteen months of delay attributable to the state violated the defendant's right to a speedy trial when, for fifteen of those months, "the [s]tate was inexcusably indifferent to its affirmative obligation to bring a simple case to trial").

## II.    Defendant Has Not Established That He Was Denied Due Process

**{16}**    Defendant argues that the district court abused its discretion by declining to compel pretrial interviews of the child with whom Defendant had been communicating, and of her parents, and that the error deprived Defendant of due process. The grant or denial of discovery in a criminal case "is a matter peculiarly within the discretion of the trial court[,]" and we thus review this issue for an abuse of discretion. *State v. Bobbin*, 1985-NMCA-089, ¶ 7, 103 N.M. 375, 707 P.2d 1185.

**{17}**    Our discovery rules provide that, within ten days of arraignment, "the state shall disclose or make available to the defendant . . . any material evidence favorable to the defendant which the state is required to produce under the due process clause of the United States Constitution." Rule 5-501(A)(6). Defendant's arraignment occurred on May 27, 2014. Nearly two years later, Defendant moved to dismiss or exclude evidence for lack of discovery, arguing among other things that the State never furnished the defense with the police report that gave rise to the investigation that eventually led to Defendant's arrest. The State provided the defense with the police report approximately one month later at a motions hearing. The district court ruled on Defendant's motion to dismiss approximately two months after the State furnished the report, and, although the court denied the motion, it granted a thirty-day continuance to allow Defendant an opportunity to interview the child and her parents. At a docket call on August 8, 2016, defense counsel represented that the defense had made contact with one of the child's parents, who refused to speak with them. The district court encouraged defense counsel to subpoena any potential witnesses they wished to interview. Later that day, defense counsel served on one of the child's parents subpoenas demanding that she and the child appear *at trial* on August 15, 2016.

**{18}**    Defendant again moved to dismiss for lack of discovery on August 12, 2016. Defense counsel represented that the defense spoke with one of the child's parents on August 6 and 8, and that those conversations revealed that the State had withheld additional discoverable information from the defense. Defense counsel contended that, because the revelation came more than two years after the indictment and on "the eve of trial[,]" dismissal was "[t]he only reasonable remedy." Defense counsel argued the motion at the August 15 trial setting, contending that the potential witnesses had not cooperated with their requests for statements and effectively moving for another continuance. The district court denied the motion, ruling that the State had not violated

any discovery rules or Defendant's right to due process, and allowed the trial to commence as scheduled that day.

**{19}**     Defendant has not persuaded us on appeal that the district court abused its discretion by trying the case as scheduled on August 15, 2016. While we do not take lightly the exceptionally late disclosure of discoverable evidence in this case, we think the district court afforded Defendant a "reasonable remedy" when it granted a thirty-day continuance for the express purpose of allowing Defendant to interview the potential witnesses identified in the police report. Defendant has not explained why, having received the police report on May 18, 2016, the defense did not speak with any of the potential witnesses until August 6. Nor has Defendant explained why the defense subpoenaed those witnesses for trial when it could have used subpoenas to demand their appearance for a statement. *See* Rule 5-503(A) NMRA (providing that, with five days' notice, "[a] party may obtain the statement of" "[a]ny person, other than the defendant, with [discoverable] information" "by serving a written 'notice of statement' " and that "[a] subpoena may also be served to secure the presence of the person"); Rule 5-511(A)(3) NMRA (permitting an attorney "authorized to practice law in New Mexico and . . . represent[ing] a party" to issue subpoenas "as an officer of the court"); Rule 9-217 NMRA (permitting the issuance of subpoenas that demand a person's appearance for a statement, deposition, or trial). Absent any reason to conclude that either the district court or the State did anything to impede Defendant's ability to interview the potential witnesses once the defense received the police report, we see no abuse of discretion in the district court's decision to proceed to trial on August 15, 2016. *Cf. Bobbin*, 1985-NMCA-089, ¶¶ 14-19 (holding that the district court did not abuse its discretion in refusing to order a deposition of a potential witness when the district court "stated that defense counsel should be allowed to interview her as soon as possible" and allowed for her deposition in the three days between a discovery hearing and trial, but the defendant "failed to pursue [those] avenues of discovery"). Accordingly, we hold that the district court did not deny Defendant due process.[3]

### III.     Defendant Failed to Preserve His Argument on Entrapment

**{20}**     Without specifying any particular error made by the district court, Defendant argues that he was entrapped. Defendant moved the district court to dismiss on an entrapment theory but later withdrew the motion, reserving the issue for trial. At trial, however, defense counsel did not request—and the district court did not issue—findings on whether Defendant was entrapped. We thus conclude that, whether Defendant contends on appeal that the district court should have dismissed the case or whether his contention is that the district court should have issued findings on entrapment, the issue is unpreserved because Defendant failed to invoke a ruling from the district court on any relief he may have sought in arguing that he was entrapped. *See* Rule 12-321(A) NMRA. Because Defendant has not raised an exception to our preservation rules and

---

[3]Defendant also argues that the district court's rulings forced him to acquiesce to the August 15 trial in the interest of preserving his right to a speedy trial while sacrificing his right to due process. Having held that Defendant was not deprived of either right, we hold that the district court did not force such a choice on Defendant.

we see no compelling reason to apply one sua sponte, *see generally* Rule 12-321(B)(2), we decline to review Defendant's argument on entrapment.[4]

## IV.     The Evidence Suffices to Support Defendant's Conviction

**{21}**     Defendant argues that, "[b]ecause [he] was entrapped, the State did not present sufficient evidence to prove the crime." However, because Defendant did not present an entrapment defense at trial, the State had no obligation to disprove entrapment. Hence, whether Defendant was entrapped has no bearing on whether the State presented sufficient evidence at trial. *See State v. Cabezuela*, 2015-NMSC-016, ¶ 14, 350 P.3d 1145 ("The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." (internal quotation marks and citation omitted)).

**{22}**     In the course of arguing that the evidence was insufficient because he was entrapped, Defendant asserts that the evidence did not suffice to support the mens rea element of the offense because the State failed to prove that he had "reason to believe" he was communicating with a child before the police became involved and introduced the idea that "Lulu" was fifteen years old. *See generally* § 30-37-3.2(A) (proscribing, in pertinent part, "*knowingly and intentionally* soliciting a child under sixteen . . . to engage in . . . sexual conduct when the perpetrator is at least four years older than the child" (emphasis added)); NMSA 1978, § 30-37-1(G)(2) (1973) (defining "knowingly" to include "having general knowledge of, or reason to know, or a belief or reasonable ground for belief which warrants further inspection or inquiry or both, of . . . the age of the minor"). At the same time, however, Defendant concedes that the evidence sufficed that he committed a fourth-degree felony under Section 30-37-3.2(A), (B)(1), and thus knowingly and intentionally solicited a child under sixteen; he nevertheless argues that the evidence was insufficient as to whether he had the requisite mental state for the greater offense under Section 30-37-3.2(C)(1), which aggravates a violation of Section 30-37-3.2(A) to a third-degree felony upon proof that the defendant appeared for a meeting pursuant to the solicitation, because he had not initiated a meeting with "Lulu" before police assumed her identity. We address Defendant's argument that the evidence was insufficient as to whether he had the requisite mental state at all salient times, noting that it is irrelevant, for the purposes of our sufficiency review, whether the police introduced the idea that "Lulu" was fifteen years old. *See* § 30-37-3.2(D) (providing that "it is not a defense" "[i]n a prosecution for child solicitation by electronic communication device," "that the intended victim of the defendant was a peace officer posing as a child under sixteen years of age").

---

4Defendant argues that, to the extent his argument on entrapment is unpreserved, he received ineffective assistance of counsel. We decline to review Defendant's claim of ineffective assistance of counsel on direct appeal, believing that a habeas corpus proceeding, where Defendant "may actually develop the record with respect to defense counsel's actions" and their reasonableness, "is the procedure of choice in this situation." *State v. Samora*, 2013-NMSC-038, ¶ 23, 307 P.3d 328 (internal quotation marks and citation omitted).

**{23}** In reviewing the sufficiency of the evidence, we first "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We then consider "whether the evidence, so viewed, supports the verdict beyond a reasonable doubt." *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076. "We do not reweigh the evidence or substitute our judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179. "We will affirm a conviction if supported by a fair inference from the evidence regardless of whether a contrary inference might support a contrary result." *State v. Barrera*, 2002-NMCA-098, ¶ 10, 132 N.M. 707, 54 P.3d 548.

**{24}** Defendant stipulated that (1) his interlocutor explicitly claimed to be fifteen years old, (2) he admitted to police that he intended to have sex with a fifteen year old, and (3) he appeared for the arranged meeting. These stipulations were supported by three trial exhibits: a log of text messages between Defendant and Officer Storey posing as "Lulu"; excerpts from a video recording of a custodial interrogation of Defendant; and a letter of apology that Defendant wrote during the interrogation. The log evidences that, on February 7, 2014, Officer Storey purported to be fifteen years old and that, later that day, Defendant suggested a meeting. On February 9, Defendant again suggested meeting. The officer, still assuming the identity of a fifteen-year-old girl, reasserted his assumed age, and Defendant responded by telling "Lulu" that she "[had] the right to be treated like an adult," thus acknowledging that he was not communicating with an adult. Moreover, in the portion of the interrogation that was admitted into evidence, Defendant stated that he knew he should not have been talking to a fifteen year old on the Internet and that he had been feeling reluctant to have sex with "Lulu" because of her age.

**{25}** We conclude that the stipulations and exhibits suffice to support the district court's determination that, when Defendant suggested a meeting with "Lulu," he knew he was suggesting a meeting with a fifteen-year-old child and, indeed, appeared for that meeting. Hence, the evidence was sufficient for the district court's finding that Defendant knowingly and intentionally solicited a child under sixteen and appeared for a meeting pursuant to the solicitation contrary to Section 30-37-3.2(A), (C)(1). *Cf. State v. Ebert*, 2011-NMCA-098, ¶ 21, 150 N.M. 576, 263 P.3d 918 (reasoning that the defendant's conduct fell under the proscriptions of Section 30-37-3.2 when the defendant "request[ed]" that a child whom he "believed" to be twelve years old engage in sexual conduct). We reject Defendant's argument that there was insufficient evidence for the guilty verdict.

**CONCLUSION**

**{26}** We affirm.

**{27} IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**MEGAN P. DUFFY, Judge**