This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40654**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**ADAM R. ZAMORA,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**Melissa A. Kennelly, District Court Judge**

Raúl Torrez, Attorney General
Maris Veidemanis, Assistant Attorney General
Lee Green, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Luz C. Valverde, Assistant Appellate Defender
Albuquerque, NM

for Appellee

## MEMORANDUM OPINION

**MEDINA, Judge.**

{1}    An October 9, 2020, criminal information charged Defendant Adam R. Zamora with six counts of criminal sexual penetration of a child J.R. who was under thirteen years of age, contrary to NMSA 1978, Section 30-9-11(A), (D) (2009); one count of criminal sexual penetration of a child A.S. who was under thirteen years of age, contrary to Section 30-9-11(A), (D); two counts of criminal sexual contact of a minor A.S. and

A.L., contrary to NMSA 1978, Section 30-9-13(A), (B) (2003); and one count of contributing to the delinquency of a minor A.L., contrary to NMSA 1978, Section 30-6-3 (1990). Following a hearing on Defendant's motion to dismiss for violating his right to a speedy trial, the district court entered an order of dismissal on speedy trial grounds. The State appeals from the order of dismissal. We reverse and remand.

**DISCUSSION**

**{2}** "The right of the accused to a speedy trial is guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution." *State v. Spearman*, 2012-NMSC-023, ¶ 16, 283 P.3d 272. In determining whether a defendant has been deprived of the right to a speedy trial, "we consider the four factors articulated in *Barker* [*v. Wingo*, 407 U.S. 514 (1972)]: (1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. "We defer to the district court's factual findings in considering a speedy trial claim, but weigh each factor de novo." *State v. Ochoa*, 2017-NMSC-031, ¶ 4, 406 P.3d 505.

**I.     Length of Delay**

**{3}** We first determine whether the length of the delay is presumptively prejudicial. "The first factor, the length of delay, has a dual function: it acts as a triggering mechanism for considering the four *Barker* factors if the delay crosses the threshold of being presumptively prejudicial, and it is an independent factor to consider in evaluating whether a speedy trial violation has occurred." *Serros*, 2016-NMSC-008, ¶ 22 (internal quotation marks and citation omitted). Our Supreme Court has established benchmarks for presumptively prejudicial delay according to the complexity of a case: twelve months for a simple case, fifteen months for a case of intermediate complexity, and eighteen months for a complex case. *See State v. Garza*, 2009-NMSC-038, ¶¶ 47-48, 146 N.M. 499, 212 P.3d 387.

**{4}** The district court found that this is a simple case. *See State v. Laney*, 2003-NMCA-144, ¶ 14, 134 N.M. 648, 81 P.3d 591 ("[S]imple cases require less investigation and tend to involve primarily police officer testimony during the trial." (internal quotation marks and citation omitted)). The State contends that the district court's finding that the case was simple is not supported by substantial evidence. The State further argues that the case is one of intermediate complexity because it involves ten charges, three victims, and three days were set aside for trial.

**{5}** The district court explained its designation of the case as simple as follows. First, "[a]lthough the criminal information contains [ten] counts, six . . . contain the identical allegations against the same alleged victim" and in the absence of a response to Defendant's motion for statement of facts, six of the counts would merge into one count, which reduces the number of counts in this case to four. Second, the State did not designate any of its twelve witnesses as experts and "it is unknown whether all of the

witnesses are expected to provide competent testimony." Third, the State failed to provide a valid cogent reason to counter Defendant's assertion that the case was simple. We address each of these determinations in turn.

**{6}** As a preliminary matter, we do not accord deference to the district court's determination that six of the CSPM counts would merge into one count. *See State v. Flores*, 2015-NMCA-081, ¶ 4, 355 P.3d 81 (stating that "we defer to the district court's factual findings that are supported by substantial evidence"). In support of its determination, the district court noted that the counts "contain the identical allegations against the same victim" and the State did not file a statement of facts. While Defendant did file a motion under Rule 5-205(C) NMRA seeking an order from the district court directing the State to file a statement of facts, he did not seek a hearing on his motion or otherwise take any action to bring the motion to the district court's attention. The district court did not address Defendant's motion at any point during the hearing on his motion to dismiss on speedy trial grounds. Consequently, the district court never ruled on Defendant's motion, much less enter an order directing the State to file a statement of facts.

**{7}** Although Defendant has a procedural due process right, which requires "the [s]tate to provide reasonable notice of charges against a person and a fair opportunity to defend," *State v. Baldonado*, 1998-NMCA-040, ¶ 21, 124 N.M. 745, 955 P.2d 214, the district court never conducted an examination on a count-by-count basis as to "whether [the] indictment [was] reasonably particular with respect to" each of the charged offenses. *Id.* ¶ 26; *see State v. Huerta-Castro*, 2017-NMCA-026, ¶ 20, 390 P.3d 185 (stating that when a defendant requests a bill of particulars, the district court is required to engage in the count-by-count examination outlined in *Baldonado*). "The district court was obliged, but did not attempt, to analyze the sufficiency of the indictment based on the facts underlying the charges according to the analytical framework we dictated in *Baldonado*." *See Huerta-Castro*, 2017-NMCA-026, ¶ 21. Moreover, our review of the record below does not reflect that Defendant ever raised an argument that the six counts should be merged—he simply filed the motion for the statement of facts and took no further action. As such, without any action by the district court the State had no obligation to file a statement of facts. *See* Rule 5-205(C) (providing that "[u]pon motion of the defendant, the court may order the state to file a statement of facts"). In light of the facts before us, it is unclear how the district court concluded that six of the CSPM counts should merge into one count. Thus, our consideration of the complexity of the case includes seven CSPM charges, two CSCM charges and one fourth degree contributing to the delinquency of a minor charge.

**{8}** As to the number of witnesses, the State identified twelve witnesses—the district court correctly observed that the State did not identify any of its witnesses as experts. However the district court also stated that "it is unknown whether all of the witnesses are expected to provide competent testimony." To be competent, a witness need only "have a basic understanding of the difference between telling the truth and lying, coupled with an awareness that lying is wrong and may result in some sort of punishment." *State v. Hueglin*, 2000-NMCA-106, ¶ 24, 130 N.M. 54, 16 P.3d 1113

(internal quotation marks and citation omitted). Moreover, witnesses are presumed to be competent to testify under Rule 11-601 NMRA. The record is void of any motion or argument challenging the competency of any of the witnesses to testify and the district court did not identify anything in the record to support such a conclusion. Therefore the district court's speculation that not all witnesses will be competent to testify is not supported by substantial evidence. *See State v. Murry*, 2014-NMCA-021, ¶ 10, 318 P.3d 180 (stating we defer to the district court's findings of fact "as long as they are supported by substantial evidence").

**{9}** Finally we turn to the district court's third reason for categorizing the case as simple—that the State failed to provide a valid cogent reason to counter Defendant's assertion that the case was simple. In its written response to Defendant's motion to dismiss, aside from asserting the case was not simple, the prosecutor made no argument that the case was one of intermediate complexity. The prosecutor made no claim that the case involved expert witnesses, scientific evidence, involved complex evidentiary issues, or that the charges would be difficult to present. *See State v. Wilson*, 2010-NMCA-018, ¶ 24, 147 N.M. 706, 228 P.3d 490 (observing that cases of intermediate complexity typically "involve numerous or relatively difficult criminal charges and evidentiary issues, numerous witnesses, expert testimony, and scientific evidence" (internal quotation marks and citation omitted)); *State v. Deans*, 2019-NMCA-015, ¶ 7, 435 P.3d 1280 (same). Rather the majority of the prosecutor's response consisted of the prosecutor's personal view that the "policy makers over-reacted to the alleged 'pandemic.'" Nor did the prosecutor address the complexity of the case during the motion to dismiss on speedy trial grounds. Instead, the prosecutor confined his argument to addressing whether Defendant demonstrated prejudice. Thus we agree with the district court that the prosecutor provided "no valid cogent reason to counter Defendant's assertion that this is a simple case."

**{10}** On appeal, the State was left with characterizing the case as one of intermediate complexity because substantial evidence did not support the district court's finding that the case was simple and because it involves ten charges and twelve witnesses. Aside from referencing the number of charges and witnesses, the State made no argument explaining why we should categorize the case as intermediate. Although only two of the district court's findings are supported by substantial evidence, based on the record and argument before us, we defer to the district court's characterization of the case as simple. *See State v. Coffin*, 1999-NMSC-038, ¶ 57, 128 N.M. 192, 991 P.2d 477 ("[W]e have determined that the [district] court is in the best position to determine the complexity of a case."); *Flores*, 2015-NMCA-081, ¶ 6 (stating that the appellate courts give deference to the district court as to the level of complexity of the case).

**{11}** Accordingly, the threshold for triggering a speedy trial analysis in this simple case was twelve months from the date Defendant's speedy trial rights attached. *See Garza*, 2009-NMSC-038, ¶ 2. "In general, the right [to a speedy trial] attaches when the defendant becomes an accused, that is, by a filing of a formal indictment or information *or arrest and holding to answer*." *State v. Urban,* 2004-NMSC-007, ¶ 12, 135 N.M. 279, 87 P.3d 1061 (emphasis added) (internal quotation marks and citation omitted).

**{12}** Defendant's speedy trial rights attached on August 26, 2020, the date he was purportedly arrested on the original charges in this case. The district court held a hearing on Defendant's motion to dismiss on July 18, 2022, and subsequently granted the motion. Therefore, the delay in this case was twenty-two months and twenty-two days, which exceeded the presumptive twelve-month threshold by ten months and twenty-two days. Because the delay was presumptively prejudicial, we continue with our *Barker* analysis. *See Garza*, 2009-NMSC-038, ¶ 21.

**{13}** "[T]he greater the delay the more heavily it will potentially weigh against the [s]tate." *Id.* ¶ 23. In this case, the delay was almost eleven months past the presumptively prejudicial period. In *State v. Marquez*, 2001-NMCA-062, ¶ 12, 130 N.M. 651, 29 P.3d 1052, this Court held that a shorter, length of delay—nine months beyond the date of presumptive prejudice in a simple case—weighed "heavily against the [s]tate." *Id.* In this case, we likewise conclude that the delay, which amounted to almost twice the presumptively prejudicial period for a simple case, weighs heavily against the State and in Defendant's favor. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶¶ 19, 65, 327 P.3d 1129 (concluding that the length of delay, which was twice as long as the length of delay considered to be presumptively prejudicial, weighed heavily against the state).

## II. Reasons for Delay

**{14}** The reasons for delay "may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). "There are three types of delay that may be attributed to the [s]tate and are weighed against it in varying ways." *State v. Castro*, 2017-NMSC-027, ¶ 22, 402 P.3d 688. First, deliberate attempts by the state to delay the trial and hamper the defense weigh heavily against the state. *Id.* Second, "negligent or administrative delay should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Serros*, 2016-NMSC-008, ¶ 29 (omission, internal quotation marks, and citation omitted). And third, there are "appropriate" delays for which there is "a valid reason, such as a missing witness." *Id.* (internal quotation marks and citation omitted). These are delays which are considered neutral and do not weigh against the state. *See id.* Finally, any delay caused by the defense weighs against the defendant. *See id.*

**{15}** By way of de novo review, we independently reweigh the reasons for delay. *See Spearman*, 2012-NMSC-023, ¶ 19 ("[W]e give deference to the district court's factual findings, but we review the weighing and the balancing of the *Barker* factors de novo." (alterations, internal quotation marks, and citation omitted)).

## A. August 25, 2020 - April 22, 2021

**{16}** During this period the case proceeded normally with the State initiating the case in magistrate court on August 25, 2020, followed by Defendant's waiver of a preliminary

hearing, and the filing of an October 9, 2020, criminal information in the district court. On November 6, 2020, the State filed pleadings one normally expects to see filed in a criminal case, including a request for a scheduling order, notice of an open file for discovery and production, a motion for discovery, a demand for notice of alibi, a request to interview witnesses, a witness list, and a certificate of compliance. On November 12, 2020, the district court entered an order amending Defendant's conditions of release, and Defendant filed a motion seeking an order directing the State to file a statement of facts, a demand for speedy trial, and a request for disclosure of evidence and witnesses. On November 13, 2020, the district court entered a scheduling order that included an April 26, 2021 trial setting. The district court amended the scheduling order on March 9, 2021, keeping the April trial setting. On April 22, 2021, the district court entered an amended notice of jury trial for June 28, 2021.

**{17}** Until the April 22, 2021, amendment to the jury trial date, the case was progressing normally and we therefore weigh this period of seven months and twenty-nine days neutrally. *See State v. Parrish*, 2011-NMCA-033, ¶ 25, 149 N.M. 506, 252 P.3d 730 (weighing the delay neutrally when "the case progressed with customary promptness"); *State v. Moreno*, 2010-NMCA-044, ¶ 13, 148 N.M. 253, 233 P.3d 782 (concluding that because the "case proceeded with customary promptness and delay cannot be held against either party").

## B.      April 23, 2021 – July 18, 2022

**{18}** Between June 9, 2021 and June 28, 2022, the district court rescheduled the trial ten times, resulting in a delay of fourteen months and twenty-six days. The district court attributed its multiple rescheduling of Defendant's trial settings "[i]n large part" to its "extremely large criminal" docket, which it attributed to the increase in criminal filings and turn over in the district attorney's office. The district court's order does not explain how turnover in the district attorney's office caused delay in this case proceeding to trial and our review of the record reveals that the State did not seek postponement of any trial settings. Delays resulting from an overburdened docket are administrative delays, which we weigh slightly against the State. *See Ochoa*, 2017-NMSC-031, ¶ 23.

**{19}** In sum, the delay of twenty-two months and twenty-two days from the date the charges were filed against Defendant to the date of the hearing on the motion to dismiss for a speedy trial violation—we weigh seven months and twenty-nine days neutrally, and the remaining fourteen months and twenty-six days slightly against the State as administrative delay.

## III.     Assertion of Right

**{20}** The third *Barker* factor analyzes the degree to which the defendant has asserted his right to a speedy trial. *Garza*, 2009-NMSC-038, ¶ 32. In analyzing whether a defendant has asserted his right to a speedy trial, we "accord weight to the frequency and force of the defendant's objections to the delay [and] also analyze the defendant's actions with regard to the delay." *Id.* (internal quotation marks and citation omitted).

**{21}** The district court found Defendant adequately asserted his speedy trial rights and we agree. Defendant filed a speedy trial demand early in the case and asserted his right to a speedy trial when he filed a motion to dismiss on June 2, 2022. *Cf. Garza*, 2009-NMSC-038, ¶ 34 (stating that the "[d]efendant's single demand for a speedy trial, preceding his motion to dismiss, . . . was sufficient to assert his right"); *see State v. Lujan*, 2015-NMCA-032, ¶ 18, 345 P.3d 1103 ("New Mexico courts . . . have concluded that a motion to dismiss based on speedy trial grounds is an assertion of the right that is weighed against the government, although it is generally not weighed heavily."). We therefore weigh this factor in Defendant's favor.

## IV.    Prejudice

**{22}** Finally, we consider the prejudice factor, which is "the heart of the right to a speedy trial." *Garza*, 2009-NMSC-038, ¶ 12. "We analyze prejudice to a defendant in a speedy trial case in light of three defense interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *State v. Smith*, 2016-NMSC-007, ¶ 60, 367 P.3d 420 (internal quotation marks and citation omitted). Of these three interests, "the most serious is the last, because the inability of a defendant adequately to prepare [their] case skews the fairness of the entire system." *Barker*, 407 U.S. at 532. It is ordinarily the defendant's burden to "make a particularized showing of prejudice to demonstrate a violation of any of the three interests." *State v. Samora*, 2016-NMSC-031, ¶ 21, 387 P.3d 230. In addition, "[i]n a speedy trial analysis, if any one of the [first] three *Barker* factors does not weigh heavily in favor of a defendant, . . . [the d]efendant must show particularized prejudice in order to prove their speedy trial [right] was violated." *State v. Wood*, 2022-NMCA-009, ¶ 21, 504 P.3d 579. The defendant bears the burden of demonstrating and substantiating a particularized showing of prejudice. *See Garza*, 2009-NMSC-038, ¶ 35.

### A.    Oppressive Pretrial Incarceration

**{23}** Whether pretrial incarceration is oppressive "depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Serros*, 2016-NMSC-008, ¶ 89 (internal quotation marks and citation omitted). Below, the district court found that Defendant "demonstrated significant particularized prejudice from the delay" where "[h]is liberty ha[d] been significantly curtailed because he ha[d] been on involuntary house arrest . . . for the last [twenty-four] months" resulting in him not being able to leave his house in two years. Defendant argues that the conditions of his house arrest "were so restrictive as to be likened to oppressive pretrial incarceration." Specifically, Defendant contends that he was subject to oppressive pretrial incarceration because he could not leave his house to work odd jobs, he could not spend time with his family, and as a result of the delay he suffered extreme anguish. The State responds that the district court erred in finding that Defendant established particularized prejudice, in part, because he "was not incarcerated during the pendency of the case [r]ather, he . . . was placed under house arrest." We agree with the State, and conclude that Defendant has

not demonstrated *undue* prejudice as a result of his house arrest while the charges were pending against him.

**{24}** "Because some degree of oppression and anxiety is inherent in every incarceration, we weigh this factor in the defendant's favor only where the pretrial incarceration or anxiety suffered is undue." *Ochoa*, 2017-NMSC-031, ¶ 51 (internal quotation marks and citation omitted). Reviewing the record below, Defendant was placed under house arrest and was not permitted to "leave the residence unless it is for a doctor's appointment, court appearance or meeting with [his] attorney." Moreover, Defendant could not leave the County of Colfax without permission of the district court. Defendant was released into the custody of a third party custodian, later transferred into the custody of another third party custodian, and placed on a GPS monitor.

**{25}** Even assuming that the almost two-year delay while under house arrest is presumptively prejudicial, *see Ochoa*, 2017-NMSC-031, ¶ 57 (stating that "[c]ontinuous pretrial incarceration is obviously oppressive to some degree, even in the absence of affirmative proof"), Defendant has failed to meet his burden of demonstrating that his being under house arrest for that period of time constituted oppressive pretrial incarceration. *See State v. Valencia*, 2010-NMCA-005, ¶ 29 147 N.M. 432, 224 P.3d 659 (concluding that the defendant failed to satisfy his burden of demonstrating undue prejudice where he "spent one month incarcerated, had to wear an ankle monitor for three months after he was bonded out, and could not go out of state"). Defendant did not sit in a jail cell pending trial—he was permitted to leave the residence for the limited purposes outlined in the conditions of his release.1 Moreover, Defendant had the ability to file a motion to modify the conditions of his release if he so desired—but he did not file any motion to modify until August 2, 2022, when he asked permission to travel to Albuquerque to meet a witness. Shortly thereafter, on August 3, 2022, the district court granted Defendant's motion to dismiss.

**{26}** To the extent that Defendant argues that his being on house arrest affected his ability to work, we find no evidence in the record to support this claim other than Defendant's mere assertion that he could not work "odd jobs." Defendant testified that he had been receiving Social Security Income (SSI), due to a disability since 1984, and had only been employed on a full-time basis for one month since that time. Moreover, in relation to Defendant's claim that he was unable to see his family—there were no conditions in his release that prevented adult members of Defendant's family from visiting him at the residence of his third party custodian. Due to the nature of the charges against Defendant, he could not be around children. Therefore, though Defendant undoubtedly suffered some degree of prejudice as a result of being under house arrest pending trial we cannot say it was *undue*. *See Garza*, 2009-NMSC-038, ¶

---

1In *State v. Vivier*, an unreported opinion, we addressed a similar issue in the context of a defendant's speedy trial rights. No. 32,095, mem. op. at 1 (N.M. Ct. App. July 13, 2012) (nonprecedential). In that case, the defendant argued he was subject to a form of pretrial incarceration by the conditions of his release because "he was required to attend counseling, report weekly to pretrial services, submit for drug screens, and pay for [an] ankle monitor." We concluded that "[w]earing an ankle monitor instead of being placed in a jail cell is not considered to be oppressive pretrial incarceration." *Id.*

35 (stating "we weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue"); *see also Valencia*, 2010-NMCA-005, ¶ 28 (stating that "[the d]efendant bears the burden to demonstrate and substantiate prejudice").

## B.      Anxiety and Concern

**{27}**    In his motion to dismiss on speedy trial grounds, Defendant did not assert and argue that the conditions of his house arrest while awaiting trial caused him to suffer undue anxiety and concern. Defendant asserted that his inability to gain employment, the restrictions on his liberty and being subject to arrest at any time for violating his conditions of release, caused him to experience particularized prejudice and that "[t]his stress and anxiety to . . . Defendant is also a factor." At the hearing on Defendant's motion to dismiss, with regard to anxiety and concern Defendant testified that the restrictions of his involuntary house arrest caused him "great anguish, leading [him] to [develop] 'suicidal thoughts,'" causing him to feel as if he could not go on with his life. Defendant did not specify at what point during the delay he began to experience anguish and suicidal thoughts, or testify that he sought medical attention to address his mental state. The district court did not make an explicit finding concerning Defendant's "anxiety and concern" in its determination that Defendant suffered particularized prejudice. And on appeal Defendant merely asserts that he "testified that he suffered extreme anguish as a result of the delay in this case." Based solely on Defendant's testimony, we can presume he suffered some degree of anxiety and concern, but without more we do not conclude that the prejudice was *undue. See Ochoa*, 2017-NMSC-031, ¶ 51 (stating that the anxiety suffered must be undue in order to weigh in a defendant's favor).

## C.      Impairment to the Defense

**{28}**    Finally, the district court made no finding of impairment to Defendant's defense—the interest deemed "most serious" in the particularized prejudice analysis. *Garza*, 2009-NMSC-038, ¶ 36 (internal quotation marks and citation omitted). Moreover, the Defendant makes no assertion on appeal that his defense was impaired in any way by the delay.

**{29}**    We conclude that Defendant failed to show particularized prejudice resulting from his house arrest.

## V.      Balancing the *Barker* Factors

**{30}**    We hold that the district court erred in determining that the delay in this case prejudiced Defendant and violated his right to a speedy trial because Defendant failed to show particularized prejudice and only one of the factors weighs heavily in his favor. *See Samora*, 2016-NMSC-031, ¶ 23 ("To find a speedy trial violation without a showing of actual prejudice, the Court must find that the three other *Barker* factors weigh heavily against the [s]tate.").

**CONCLUSION**

**{31}**   For the reasons stated above, we reverse and remand for further proceedings consistent with this opinion.

**{32}   IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**MICHAEL D. BUSTAMANTE, Judge,
retired, sitting by designation**